STEPHANIE YONEKURA
Acting United States Attorney
SANDRA R. BROWN
Assistant United States Attorney
Chief, Tax Division
BENJAMIN L. TOMPKINS (SBN Pending / D.C. Bar No. 474906)
Assistant United States Attorney
    Room 7211 Federal Building
    300 North Los Angeles Street
    Los Angeles, CA 90012
    Telephone: (213) 894-6165
    Facsimile: (213) 894-0115
    Email: benjamin.tompkins@usdoj.gov

Attorneys for United States of America

FILED
CLERK, U.S. DISTRICT COURT

OCT 2 4 2014

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

WESTERN PROGRESSIVE, LLC,

               Plaintiff,

vs.

TONY TENERELLI, an individual;
STEPHANIE TENERELLI, an individual;
THE UNITED STATES OF AMERICA;
and DOES 1 to 50, inclusive;

               Defendants.

Case No. CV 14-02197-JGB (SPx)

NOTICE OF REMOVAL

Comes now United States of America, by and through the undersigned attorneys, and hereby gives notice pursuant to 28 U.S.C. § 1446(a) that it is removing this action to this Court on the following grounds:

    1.    On September 19, 2014, Plaintiff Western Progressive, LLC, filed an interpleader complaint in the Superior Court of the State of California for the County of San Bernardino, to determine priority to approximately $33,236.74 (including

$27,774.24 in what it contends are the surplus proceeds, and Plaintiff's right to $2,100 in processing and filing costs and $3,362.50 in attorneys' fees). *See Western Progressive LLC v. Tony Tenerelli, et al.*, Case No. CIVDS1414106 (San Bernardino Super. Ct.). Copies of all papers that have been made known to the United States are attached hereto as Exhibit A.

2. The foregoing constitutes an action that is removable to this Court pursuant to 28 U.S.C. §§ 1441(a), 1442(a)(1), or 1444.

3. Plaintiff served the United States Attorney's Office for the Central District of California via personal delivery on September 29, 2014. Undersigned counsel could locate no record that the Plaintiff served the Attorney General, either via certified or registered mail as required under 28 U.S.C. § 2410(b). As a result and regardless of whether Plaintiff perfected service, the United States has timely filed this notice of removal within thirty days of service under 28 U.S.C. § 1446(b).

4. A copy of this notice will be filed with the Clerk of the Court for the Superior Court of the State of California for the County of San Bernardino pursuant to 28 U.S.C. § 1446(d), after the filing of the original of this notice in this Court. This notice will also direct that any funds being held by the Clerk of the Court be turned over to the Clerk of the Court for the Central District of California.

WHEREFORE, this civil action now pending in the Superior Court of San Bernardino County, California is hereby removed to the United States District Court for

1     the Central District of California.

2

3

4     Dated: October 24, 2014            Respectfully submitted,

5                                     STEPHANIE YONEKURA
                                    United States Attorney

6                                     SANDRA R. BROWN
                                    Assistant United States Attorney

7                                     Chief, Tax Division

8                                     _____/s/_____

9                                     BENJAMIN L. TOMPKINS
                                    Assistant United States Attorney

10                                    Attorneys for UNITED STATES OF
                                    AMERICA

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT A

9/29/14

**SUM-100**

# SUMMONS
## (CITACION JUDICIAL)

**FOR COURT USE ONLY**
**(SOLO PARA USO DE LA CORTE)**

**NOTICE TO DEFENDANT:**
**(AVISO AL DEMANDADO):**

TONY TENERELLI, an individual; STEPHANIE TENERELLI, an individual; THE UNITED STATES OF AMERICA, and DOES 1 to 50

**F I L E D**
SUPERIOR COURT OF CALIFORNIA
COUNTY OF SAN BERNARDINO
SAN BERNARDINO DISTRICT

SEP 1 9 2014

**YOU ARE BEING SUED BY PLAINTIFF:**
**(LO ESTÁ DEMANDANDO EL DEMANDANTE):**

WESTERN PROGRESSIVE, LLC

BY _____
ILAYALI WADE, DEPUTY

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.

Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.

Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.

| | |
|---|---|
| The name and address of the court is: (El nombre y dirección de la corte es): Superior Court of California, County of San Bernardino 247 West Third Street, San Bernardino, CA 92415 | **CASE NUMBER:** (Número del Caso): CIVDS1414106 |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):
The Law Offices of Les Zieve, 30 Corporate Park, Irvine, CA 92606, (714) 848-7920

| | | | |
|---|---|---|---|
| **DATE:** SEP 1 9 2014 (Fecha) | Clerk, by (Secretario) | Ilayali Wade | , Deputy (Adjunto) |

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of (specify):

3. ☒ on behalf of (specify): The United States of America

under: ☐ CCP 416.10 (corporation) ☐ CCP 416.60 (minor)
☐ CCP 416.20 (defunct corporation) ☐ CCP 416.70 (conservatee)
☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
☒ other (specify): CCP 416.50 Public Entity
4. ☒ by personal delivery on (date): 9/29/14

[SEAL]

COPY

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465

**RECEIVED**
SEP 2 9 2014
BY: TAX

1  LAW OFFICES OF LES ZIEVE
   Nathaniel Brodnax, Bar No. 255285
2  Mike Aleali, Bar No. 285874
   30 Corporate Park, Suite 450
3  Irvine, CA 92606
   Telephone: (714) 848-7920
4  Fax:  (714) 908-7855

**F I L E D**
SUPERIOR COURT OF CALIFORNIA
COUNTY OF SAN BERNARDINO
SAN BERNARDINO DISTRICT

SEP 1 9 2014

BY _____
   LAYALI WADE, DEPUTY

5  Attorneys for Plaintiff
   WESTERN PROGRESSIVE, LLC
6

7          IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA
8
              FOR THE COUNTY OF SAN BERNARDINO
9

| | | |
|---|---|---|
| 10  WESTERN PROGRESSIVE, LLC, | ) | CASE NO.: CIVDS1414106 |
| 11          Plaintiff, | ) | Unlimited Jurisdiction |
| | ) | Date Action Filed: |
| 12  vs. | ) | |
| | ) | Assigned for All Purposes to |
| 13  TONY TENERELLI, an individual; | ) | Hon. |
| STEPHANIE TENERELLI, an | ) | Dept. |
| 14  individual; THE UNITED STATES OF | ) | |
| AMERICA; and DOES 1 to 50, inclusive; | ) | **COMPLAINT IN INTERPLEADER** |
| 15 | ) | |
| | ) | **[Interplead Funds: $27,774.24]** |
| 16          Defendants. | ) | |
| | ) | Trial Date:          None set. |
| 17 | ) | |
| 18 | ) | |
| 19 | ) | |
| 20 | ) | |
| 21 | ) | |

22
23
24       Plaintiff Western Progressive, LLC ("Plaintiff" or "Trustee"), acting in its capacity as

25  trustee under a deed of trust by and through its attorneys, the Law Offices of Les Zieve, hereby

26  alleges and brings this action to interplead against Tony Tenerelli, Stephanie Tenerelli, The

27  United States of America on behalf of the Internal Revenue Service and Does 1 to 50, inclusive

28  (collectively "Defendants") as follows:

1

COMPLAINT IN INTERPLEADER

## PARTIES AND JURISDICTION

1.      Plaintiff Western Progressive, LLC ("Plaintiff" or "Trustee") is, and at all times relevant hereto was, a California limited liability corporation, existing under the laws of the United States of America, and qualified to do business in the County of San Bernardino and the State of California.

2.      Plaintiff is informed and believes, and thereon alleges, Tony Tenerelli is an individual, over the age of 18, and is a resident of San Bernardino County California.

3.      Plaintiff is informed and believes, and thereon alleges, that Stephanie Tenerelli is an individual, over the age of 18, and is a resident of San Bernardino County California.

4.      Plaintiff is further informed and believes, and thereon alleges, that Tony and Stephanie Tenerelli (collectively the "Tenerellis") are the alleged former owners of the real property, commonly known as 1334 North 2nd Ave. Upland Ca 91786 ("Property") and are potential claimants of the interplead funds. *See* Exhibits B.

5.      Plaintiff is informed and believes, and thereon alleges, that the United States of America on Behalf of the Internal Revenue Service (the "IRS") is a public instrumentality existing and doing business under the laws of the United States of America, qualified to do business in the State of California, and is named as a potential claimant of the interplead funds by reason of two Federal Tax Liens recorded against the Property. Federal Tax lien Serial Number 836064911 against taxpayer Tony Tenerelli recorded on December 20, 2011, Instrument file number 2011-0539002 and Federal Tax Lien Serial Number 880805012 against taxpayer Tony Tenerelli, recorded on August 2, 2012 Instrument file number 2012-0309103. *See* Exhibit G.

6.      Plaintiff is unaware of the true names or capacities whether individual, corporate, associate or otherwise of the defendants sued herein as DOES 1 to 50, inclusive, and therefore sues said defendants by such fictitious names. Plaintiff will amend this complaint to show the true name and capacities of the fictitiously named DOE defendants when Plaintiff ascertains same.

///

COMPLAINT IN INTERPLEADER

## VENUE

7.     Venue for this action is with the Superior Court for the State of California in and for the County of San Bernardino pursuant to Code of Civil Procedure section 760.050, in that ~~the real property that is the subject of this action is located in said county and state.~~

8.     The real property at issue, which is the subject of this action, is commonly known as 1334 North 2nd Ave Upland CA 91786 (previously defined as, the "Property") and is legally described as set forth in Exhibit A attached hereto and made a part hereof.

## GENERAL ALLEGATIONS

9.     For valuable consideration, the Tenerellis executed and delivered to New Century Mortgage that certain promissory note evidencing a loan to the Tenerellis in the principal amount of $424,000.00 ("Note"). To secure payment of the principal sum and interest provided in the Note, as part of the same transaction and incorporated herein by this reference, the Tenerellis executed and delivered to Mortgage Electronic Registration System, Inc. as beneficiary that certain Deed of Trust.  The Deed of Trust was recorded on November 9, 2006 in the Official Records as instrument no. 2006-0766821 ("Deed of Trust").  A true and correct copy of the Deed of Trust is attached hereto and made a part hereof as Exhibit B.

10.     On or about February 25, 2014, Plaintiff as the duly appointed trustee of the above referenced Deed of Trust, after giving all notices required by law, held a foreclosure sale of the Property pursuant to the power of sale under said Deed of Trust.  The Trustee's sale resulted in the receipt of funds that exceeded the amount of funds due and owing under the Deed of Trust foreclosed upon.

## FIRST CAUSE OF ACTION

### (Interpleader Against All Defendants)

11.     Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 11 inclusive, of this Complaint as though set forth in full herein.

12.     The amount of the unpaid debt at the time of the above referenced Trustee's sale was $364,063.26. The Grantee at the foreclosure sale was not the foreclosing Beneficiary. The surplus funds remaining after the amount paid to the Grantee together with foreclosure fees and

3

1    costs were $33,236.74 ("Funds"). A true and correct copy of the Trustees Deed Upon sale is

2    attached hereto and made part hereof as Exhibit C.

3        13.    On or about May 9, 2014 pursuant to California Civil Code § 2924j(a), Plaintiff

4    sent written notice to all persons with recorded interest in the Property as of the date immediately

5    prior to the Trustee's sale who would be entitled to notice pursuant to subdivision (b) and (c) of

6    Section 2924b. A true and correct copy of the Notice of Proceeds of Sale and the Trustee's Sale

7    Guarantee obtained prior to foreclosure are attached hereto and made a part hereof as Exhibit D

8    and E.

9        14.    On or about May 19, 2014, the Tenerellis submitted a written claim for the

10   remaining surplus funds resulting from the above referenced trustee sale. The purported claim

11   was based upon the Tenerelli's status as former owners of the foreclosed property at the time of

12   the trustee sale. A true and correct copy of the Tenerelli's written claim and Affidavit is attached

13   hereto and made a part hereof as Exhibit F.

14       15.    On or about July 10, 2014 the IRS submitted a claim in the sum of $80,528.33

15   based upon its recorded federal tax liens. A true and correct copy of the Tenerelli's written claim

16   and Affidavit is attached hereto and made a part hereof as Exhibit G.

17       16.    On July 29, 2014 Plaintiff received a communication from the Tenerelli's counsel

18   stating that they do not owe the IRS any money, thereby disputing the IRS's claim. A true and

19   correct copy of that communication is attached hereto and made a part hereof as Exhibit H.

20       17.    Plaintiff has no independent liability in this matter, and has no interest in which

21   party ultimately prevails. Plaintiff is a disinterested stakeholder only. Plaintiff has properly

22   exercised its statutory right to file a Complaint in Interpleader regarding unresolved claims, so

23   that the Court can decide who is legally entitled to the Funds. Accordingly, Plaintiff brings this

24   Complaint before the Court.

25       18.    Based on the conflict of information received by Plaintiff and the question as to

26   the validity of the IRS's claim, Plaintiff must avail itself of the Interpleader process. As such,

27   Plaintiff has incurred and will continue to incur attorneys' fees and costs in connection with this

28   proceeding.   Plaintiff has incurred initial costs of $2,100.00 for processing and filing costs,

4

---

COMPLAINT IN INTERPLEADER

1  notice preparation and determination and management of claims.  Plaintiff has also incurred

2  $3,362.50 attorneys' fees and costs for bringing this application and therefore, respectfully

3  requests the Court issue an order permitting Plaintiff to deduct the amounts from the Funds

4  before its deposit with the Court's clerk.

5       19.    Plaintiff further seeks an order permitting it to deposit with the Court

6  undistributed surplus proceeds in the amount of $27,774.24.

7       20.    Plaintiff requests Defendants be ordered to interplead and litigate their respective

8  rights to the remaining Funds.

9                                   **PRAYER**

10      **WHEREFORE**, Plaintiff prays for judgment against Defendants, and each of them, as

11  follows:

12      1.    That Defendants be ordered to interplead and litigate their respective rights to the

13  above-described undistributed surplus proceeds, resulting from Trustee's sale held on February

14  25, 2014, in the amount of $27,774.24;

15      2.    That Plaintiff be discharged from any and all liability of all claims of each and

16  any claimant and dismissed from this action with prejudice, and freed from the obligation of

17  participating in the litigation between the claimants;

18      3.    That Plaintiff be awarded costs and reasonable attorney fees in the amount of

19  $5,462.50, to be paid out of the monies deposited with the Court;

20      4.    Should the court deny Plaintiff's request to be discharged from any and all

21  liability and to be dismissed from the action; that Plaintiff shall be awarded additional reasonable

22  attorney fees and costs incurred during this action;

23      5.    For such other relief as the court may deem just and proper.

24

25  DATED:    September 12, 2014                    LAW OFFICES OF LES ZIEVE

26                                         By: _____

27                                              NATHANIEL BRODNAX
                                                MIKE ALEALI

28                                              Attorneys for Plaintiff

5

COMPLAINT IN INTERPLEADER

# EXHIBIT A

# EXHIBIT A

Order Number:  0623-2564605  (07)
Page Number:  6

## LEGAL DESCRIPTION

Real property in the City of Upland, County of San Bernardino, State of California, described as follows:

LOT 11, TRACT 4616, IN THE CITY OF UPLAND, COUNTY OF SAN BERNARDINO, STATE OF CALIFORNIA, AS PER PLAT RECORDED IN BOOK 60, PAGES 8 AND 9 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

APN: 1045-372-22

# EXHIBIT B

# EXHIBIT B

# FIRST AMERICAN TITLE



Electronically Recorded in Official Records, County of San Bernardino

**LARRY WALKER**
Auditor/Controller - Recorder

**701 First American - CF**

11/03/2006
08:40 AM
SH

| | | |
|---|---|---|
| Doc #: **2006-0766821** | Titles: **1** | Pages: **17** |

| | |
|---|---|
| Fees | 58.00 |
| Taxes | .00 |
| Other | .00 |
| **PAID** | **58.00** |

Recording Requested By:
New Century Mortgage
Corporation
Return To:
New Century Mortgage
Corporation
18400 Von Karman, Ste 1000
Irvine, CA 92612

Prepared By:
New Century Mortgage
Corporation
18400 Von Karman, Ste 1000
Irvine, CA 92612

————————[Space Above This Line For Recording Data]————————

*2564405.*

# DEED OF TRUST

MIN 100488910105343536

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated November 1, 2006 together with all Riders to this document.
**(B) "Borrower"** is TONY TENERELLI and STEPHANIE TENERELLI, Husband and Wife, As Joint Tenants

Borrower's address is 1442 N. QUINCY WAY , Upland, CA 91786
. Borrower is the trustor under this Security Instrument.

**(C) "Lender"** is New Century Mortgage Corporation

Lender is a Corporation
organized and existing under the laws of California

1010534353

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS    Form 3005 1/01

-6A(CA) (0207)
Page 1 of 15    Initials

VMP MORTGAGE FORMS - (800)521-7291

Lender's address is 18400 Von Karman, Suite 1000, Irvine, CA 92612

(D) "Trustee" is FIRST AMERICAN TITLE

(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(F) "Note" means the promissory note signed by Borrower and dated November 1, 2006
The Note states that Borrower owes Lender FOUR HUNDRED TWENTY-FOUR THOUSAND AND 00/100                                                                                          Dollars
(U.S. $424,000.00            ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than 12/01/2036

(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☒ Other(s) [specify] |

Prepayment Rider

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) "Escrow Items" means those items that are described in Section 3.

(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

Initials: [signature]

1010534353

-6A(CA) (0207)                          Page 2 of 15                          Form 3005   1/01

(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

## TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the

|  | County | of | San Bernardino | : |
| [Type of Recording Jurisdiction] | | | [Name of Recording Jurisdiction] | |

See Legal Description Attached Hereto and Made a Part Hereof

Parcel ID Number: 1045-372-0-000                                which currently has the address of

1334 NORTH 2ND AVENUE                                                                    [Street]

Upland                                                               [City], California  91786        [Zip Code]

("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances

1010534353

Initials:

-6A(CA) (0207)                        Page 3 of 15                        Form 3005  1/01

of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be

Initials:

1010534353

of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be

1010534353

-6A(CA) (0207)        Page 4 of 15        Initials: [signature]        Form 3005   1/01

in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

1010534353

Initials ___

-6A(CA) (0207)                    Page 6 of 15                    Form 3005   1/01

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

1010534353

-6A(CA) (0207)          Page 8 of 15          Initials:          Form 3005   1/01

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender

1010534353

Initials

-6A(CA) (0207)   Page 9 of 15   Form 3005   1/01

to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.



Initials

1010534353

-6A(CA) (0207)                                   Page 10 of 18                                   Form 3005   1/01

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

1010534353

Initials ___

@MMP® -6A(CA) (0207)          Page 11 of 15          Form 3005   1/01

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. Reconveyance. Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24. Substitute Trustee. Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25. Statement of Obligation Fee. Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

1010534353

Initials:

-6A(CA) (0207)          Page 13 of 16          Form 3005   1/01

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____        _____ (Seal)
                                 TONY TENERELLI                    -Borrower

_____        _____ (Seal)
                                 STEPHANIE TENERELLI               -Borrower

_____ (Seal)    _____ (Seal)
                    -Borrower                            -Borrower

_____ (Seal)    _____ (Seal)
                    -Borrower                            -Borrower

_____ (Seal)    _____ (Seal)
                    -Borrower                            -Borrower

1010534353

-6A(CA) (0207)        Page 14 of 15        Form 3005   1/01

State of California
County of _San Bernardino_ } ss.

On _November 3, 2006_ before me, _Nicole Allison, Notary Public_ personally appeared

_Tony Tenerelli and Stephanie Tenerelli_

, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_Nicole Allison_ _____ (Seal)

NICOLE ALLISON
Commission # 1482686
Notary Public · California
San Bernardino County
My Comm. Expires Apr 11, 2008

-6A(CA) (0207)                    Page 15 of 15

Initials: _____

1010534353

Form 3005   1/01

MIN: 10048891010534536

# PREPAYMENT RIDER

This Prepayment Rider is made this 1st day of November, 2006 and is incorporated into and shall be deemed to amend and supplement the Promissory Note (the "Note") and Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure repayment of Borrower's Note to
New Century Mortgage Corporation                                    (the "Lender").

To the extent that the provisions of this Prepayment Rider are inconsistent with the provisions of the Note and/or Security Instrument, the provisions of this Rider shall prevail over and shall supersede any such inconsistent provisions of the Note and/or Security Instrument.

In addition to the covenants and agreements made in the Note and Security Instrument, the Borrower and Lender further covenant and agree as follows:

### 4. BORROWER RIGHT TO PREPAY

I have the right to make prepayments of principal any time before they are due. A payment of principal only is known as a "prepayment". When I make a prepayment, I will tell the Note Holder in writing I am doing so. The Note Holder will use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will be no changes in the due dates of my monthly payments unless: the Note Holder agrees in writing to those changes.

If within 3 year(s) from the date of execution of the Security Instrument, I make a full prepayment or, in certain cases a partial prepayment, and the total of such prepayment(s) in any 12-month period exceeds TWENTY PERCENT (20%) of the original principal amount of this loan, I will pay a prepayment charge in an amount equal to the payment of 6 months advance interest on the amount by which the total of my prepayment(s) within that 12-month period exceeds TWENTY PERCENT (20%) of the original principal amount of the loan.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Prepayment Rider.

TONY TENERELLI                          STEPHANIE TENERELLI

NCMC
Prepayment Penalty Rider
Fixed Rate - 1st Lien - MultiState                 Page 1 of 1
RE-511   (080106)

1010534353

# EXHIBIT C

# EXHIBIT C

**Western Progressive, LLC**
**2002 Summit Blvd, Suite 600**
**Atlanta, GA 30319**
**(866) 960-8299**

3/5/2014

2ND AVE TRUST #1334, GALILEO FINANCIAL, LLC AS TRUSTEE
27372 ALISO CREEK RD,
ALISO VIEJO, CA 92656

TS #:      2012-24485                    Loan #:     706076957
Property Address:     **1334 NORTH 2ND AVENUE**
                      **UPLAND, CALIFORNIA 91786**

Dear 2ND AVE TRUST #1334, GALILEO FINANCIAL, LLC AS TRUSTEE

Enclosed herein please find the **unrecorded** Trustee's Deed Upon Sale for the above mentioned property which you purchased at the foreclosure sale held on 2/25/2014.

__X__   A refund in the amount of $700.00 is not attached.
_____   The exact amount was collected at the sale and there will not be any refund.

Should you have any questions or concerns in regards to this matter please feel free to give us a call.  We will be glad to be of any assistance.

Thank you,

_____
Russel Dan, Specialist

RECORDING REQUESTED BY:
Western Progressive, LLC

AND WHEN RECORDED TO:
2ND AVE TRUST #1334, GALILEO FINANCIAL,
LLC AS TRUSTEE
27372 ALISO CREEK RD,
ALISO VIEJO, CA 92656

Forward Tax Statements to
the address given below
2ND AVE TRUST #1334, GALILEO FINANCIAL,
LLC AS TRUSTEE
27372 ALISO CREEK RD,
ALISO VIEJO, CA 92656

SPACE ABOVE LINE FOR RECORDER'S USE

TS #: 2012-24485                                     Order #: 1210-CA-450922
Loan #: 706076957

## TRUSTEE'S DEED UPON SALE

A.P.N.: 1045-372-22-0-000                    Transfer Tax: $0.00

The Grantee Herein was not the Foreclosing Beneficiary.
The Amount of the Unpaid Debt was $364,063.26
The Amount Paid by the Grantee was $397,300.00
Said Property is in the City of UPLAND, County of San Bernardino

Western Progressive, LLC, as Trustee, (whereas so designated in the Deed of Trust hereunder more particularly
described or as duly appointed Trustee) does hereby GRANT and CONVEY to

2ND AVE TRUST #1334, GALILEO FINANCIAL, LLC AS TRUSTEE

(herein called Grantee) but without covenant or warranty, expressed or implied, all right title and interest conveyed
to and now held by it as Trustee under the Deed of Trust in and to the property situated in the county of San
Bernardino, State of California, described as follows:

LOT 11, TRACT 4616, IN THE CITY OF UPLAND, COUNTY OF SAN BERNARDINO, STATE OF CALIFORNIA, AS PER PLAT
RECORDED IN BOOK 60, PAGES 8 AND 9 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

This conveyance is made in compliance with the terms and provisions of the Deed of Trust executed by TONY
TENERELLI AND STEPHANIE TENERELLI, HUSBAND AND WIFE, AS JOINT TENANTS as Trustor,
dated 11/1/2006 of the Official Records in the office of the Recorder of San Bernardino, California under the
authority and powers vested in the Trustee designated in the Deed of Trust or as the duly appointed Trustee, default
having occurred under the Deed of Trust pursuant to the Notice of Default and Election to Sell under the Deed of
Trust recorded on 11/9/2006, instrument number 2006-0766821, Book ---, Page --- and rerecorded on --- as ---'of
official records.  Trustee having complied with all applicable statutory requirements of the State of California and
performed all duties required by the Deed of Trust including sending a Notice of Default and Election to Sell within
ten days after its recording and a Notice of Sale at least twenty days prior to the Sale Date by certified mail, postage
pre-paid to each person entitled to notice in compliance with California Civil Code 2924b.

# TRUSTEE'S DEED UPON SALE

TS #: 2012-24485
Loan #: 706076957
Order #: 1210-CA-450922

All requirements per California Statutes regarding the mailing, personal delivery and publication of copies of Notice of Default and Election to Sell under Deed of Trust and Notice of Trustee's Sale, and the posting of copies of Notice of Trustee's Sale have been complied with. Trustee, in compliance with said Notice of Trustee's sale and in exercise of its powers under said Deed of Trust sold said real property at public auction on 2/25/2014. Grantee, being the highest bidder at said sale became the purchaser of said property for the amount bid, being **$397,300.00**, in lawful money of the United States, in pro per, receipt thereof is hereby acknowledged in full/partial satisfaction of the debt secured by said Deed of Trust.

In witness thereof, **Western Progressive, LLC**, as Trustee, has this day, caused its name to be hereunto affixed by its officer thereunto duly authorized by its corporation by-laws.

Date: 3/6/2014

Western Progressive, LLC

By:

Stephanie Spurlock, Trustee Sale Officer

STATE OF Georgia
COUNTY OF Dekalb

On 3/6/2014 before me, Laterrika Thompkins Personally appeared Stephanie Spurlock who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of Georgia that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

BOE-502-A (FRONT) REV. 8 (10-05)
**PRELIMINARY CHANGE OF OWNERSHIP REPORT**

[To be completed by transferee (buyer) prior to transfer of subject property in accordance with section 480.3 of the Revenue and Taxation Code.] A Preliminary Change of Ownership Report must be filed with each conveyance in the County Recorder's office for the county where the property is located; this particular form may be used in all 58 counties of California.

| | FOR RECORDER'S USE ONLY |
|---|---|

THIS REPORT IS NOT A PUBLIC DOCUMENT

SELLER/TRANSFEROR: Western Progressive, LLC, as agent

BUYER/TRANSFEREE: 2nd Ave Trust #1334, Galileo Financial, LLC as Trustee

ASSESSOR'S PARCEL NUMBER(S): 1045-372-22-0-000

PROPERTY ADDRESS OR LOCATION: 1334 NORTH 2ND AVENUE, UPLAND, CALIFORNIA 91786

MAIL TAX INFORMATION TO:      Name Ocwen Loan Servicing, LLC
　　　　　　　　　　　　　　　Address 1661 Worthington Road , West Palm Beach, FL 33409
　　　　　　　　　　　　　　　Phone Number (8 a.m-5 p.m.) 877-596-8580

NOTICE: A lien for property taxes applies to your property on January 1 of each year for the taxes owing in the following fiscal year, July 1 through June 30. One-half of these taxes is due November 1, and one-half is due February 1. The first installment becomes delinquent on December 10, and the second installment becomes delinquent on April 10. One tax bill is mailed before November 1 to the owner of record. You may be responsible for the current or upcoming property taxes even if you do not receive the tax bill.

The property which you acquired may be subject to a supplemental assessment in an amount to be determined by the San Bernardino Assessor.   For further information on your supplemental roll obligation, please call the San Bernardino Assessor at

---

**PART I: TRANSFER INFORMATION** (please answer all questions)

| YES | NO | | |
|---|---|---|---|
| ☐ | ☒ | A. | Is this transfer solely between husband and wife (addition of a spouse, death of a spouse, divorce settlement, etc)? |
| ☐ | ☒ | B. | Is this transaction only a correction of the name(s) of the person(s) holding title to the property (for example, a name change upon marriage)? Please explain _____ |
| ☐ | ☒ | C. | Is this document recorded to create, terminate, or reconvey a lender's interest in the property? |
| ☐ | ☒ | D. | Is this transaction recorded only as a requirement for financing purposes or to create, terminate, or reconvey a security interest (e.g., cosigner)? Please explain _____ |
| ☐ | ☒ | E. | Is this document recorded to substitute a trustee of a trust, mortgage, or other similar document? |
| ☐ | ☒ | F. | Did this transfer result in the creation of a joint tenancy in which the seller (transferor) remains as one of the joint tenants? |
| ☐ | ☒ | G. | Does this transfer return property to the person who created the joint tenancy (original transferor)? |
| | | H. | Is this a transfer of property: |
| ☐ | ☒ | | 1.  to a revocable trust that may be revoked by the transferor and is for the benefit of the ☐ transferor ☐ transferor's spouse? |
| ☐ | ☒ | | 2.  to a trust that may be revoked by the Creator/Grantor who is also a joint tenant, and which names the other joint tenant(s) as beneficiaries when the Creator/Grantor dies? |
| ☐ | ☒ | | 3.  to an irrevocable trust for the benefit of the Creator/Grantor and/or Grantor's spouse? |
| ☐ | ☒ | | 4.  to an irrevocable trust from which the property reverts to the Creator/Grantor within 12 years? |
| ☐ | ☒ | I. | If this property is subject to a lease, is the remaining lease term 35 years or more including written options? |
| ☐ | ☒ | *J. | Is this a transfer between ☐ parent(s) and child(ren)? ☐ or from grandparent(s) to grandchild(ren)? |
| ☐ | ☒ | *K. | Is this transaction to replace a principal residence by a person 55 years of age or older? Within the same county? ☐ Yes ☐ No |
| ☐ | ☒ | *L. | Is this transaction to replace a principal residence by a person who is severely disabled as defined by Revenue and Taxation Code section 69.5? Within the same county? ☐ Yes ☐ No |
| ☐ | ☒ | M. | Is this transfer solely between domestic partners currently registered with the California Secretary of State? |

*If you checked yes to J, K or L, you may qualify for a property tax reassessment exclusion, which may result in lower taxes on your property. If you do not file a claim, your property will be reassessed.
Please provide any other information that will help the Assessor to understand the nature of the transfer.
If the conveying document constitutes and exclusion from a change in ownership as defined in section 62 of the Revenue and Taxation Code for any reason other than those listed above, set forth the specific exclusions claimed: _____

**Please answer all questions in each section.  If a question does not apply, indicate with "N/A".  Sign and date at bottom of second page.**

---

**PART II: OTHER TRANSFER INFORMATION**

A.    Date of transfer if other than recording date:   2/25/2014

B.    Type of transfer (please check appropriate box):
　　　☐ Purchase     ☒ Foreclosure     ☐ Gift     ☐ Trade or Exchange     ☐ Merger, Stock, or Partnership Acquisition
　　　☐ Contract of Sale – Date of Contract _____
　　　☐ Inheritance – Date of Death _____     ☐ Other (please explain): _____
　　　☐ Creation of Lease     ☐ Assignment of a Lease     ☐ Termination of a Lease     ☐ Sale/Leaseback
　　　☐ Date lease began _____
　　　☐ Original term in years (including written options) _____
　　　☐ Remaining term in years (including written options) _____
　　　　Monthly Payment _____     Remaining Term _____

C.    Was only a partial interest in the property transferred?   ☐ Yes   ☒ No
　　　If yes, indicate the percentage transferred _____%.

BOE-502-A (BACK) REV. 8 (10-05)

*Please answer, to the best of your knowledge, all applicable questions, then sign and date. If a question does not apply, indicate with "N/A."*

## PART III: PURCHASE PRICE AND TERMS OF SALE

A. CASH DOWN PAYMENT OR value of trade or exchange (excluding closing costs)      Amount $ _____

B. FIRST DEED OF TRUST @ _____ % interest for _____ years. Pymts./Mo. = $ _____ (Prin. & Int. only)    Amount $ _____
- ☐ FHA( _____ Discount Points)    ☐ Fixed Rate     ☐ New loan
- ☐ Conventional     ☐ Variable Rate     ☐ Assumed existing loan balance
- ☐ VA( _____ Discount Points)    ☐ All inclusive D.T.($ _____    ☐ Bank or savings & loan
     Wrapped)
- ☐ Cal-Vet     ☐ Loan carried by seller     ☐ Finance company
- Balloon payment  ☐ Yes  ☐ No      Due Date _____    Amount $ _____

C. SECOND DEED OF TRUST @ _____ % interest for _____ years. Pymts./Mo. = $ _____ (Prin. & Int. only)   Amount $ _____
- ☐ Bank or savings & loan     ☐ Fixed Rate     ☐ New loan
- ☐ Loan carried by seller     ☐ Variable Rate     ☐ Assumed existing loan balance
- Balloon payment  ☐ Yes  ☐ No      Due Date _____    Amount $ _____

D. OTHER FINANCING: Is other financing involved not covered in (b) or (c) above?  ☐ Yes  ☐ No   Amount $ _____
- Type _____ @ _____ % interest for _____ years. Pymts./Mo. = $ _____ (Prin. & Int. only)
- ☐ Bank or savings & loan     ☐ Fixed Rate     ☐ New loan
- ☐ Loan carried by seller     ☐ Variable Rate     ☐ Assumed existing loan balance
- Balloon payment  ☐ Yes  ☐ No      Due Date _____    Amount $ _____

E. WAS AN IMPROVEMENT BOND ASSUMED BY THE BUYER  ☐ Yes  ☐ No   Outstanding Balance:   Amount $ _____

F. TOTAL PURCHASE PRICE (or acquisition price, if traded or exchanged, include real estate commission if paid)

           TOTAL ITEMS A THROUGH E    $ _____

G. PROPERTY PURCHASED  ☐ Through a broker  ☐ Direct from seller  ☐ From a family member  ☐ Other (please explain): _____

If purchased through a broker, provide broker's name and phone number: _____

Please explain special terms, seller concessions, or financing and any other information that would help the Assessor understand the purchase price and terms of sale: _____

## PART IV: PROPERTY INFORMATION

A. TYPE OF PROPERTY TRANSFERRED:
- ☐ Single-family residence     ☐ Agricultural     ☐ Timeshare
- ☐ Multiple-family residence (no. of units: _____ )   ☐ Co-op/Own-your-own    ☐ Manufactured home
- ☐ Commercial/Industrial     ☐ Condominium     ☐ Unimproved lot
- ☐ Other (Description: i.e., timber, mineral, water rights, etc. _____ )

B. IS THIS PROPERTY INTENDED AS YOUR PRINCIPAL RESIDENCE? ☐ Yes ☐ No
- If yes, enter date of occupancy _____ / _____ , 20 _____ or intended occupancy _____ / _____ , 20 _____
         (month)  (day)    (year)               (month)  (day)   (year)

C. IS PERSONAL PROPERTY INCLUDED IN PURCHASE PRICE (i.e., furniture, farm equipment, machinery, etc.) (other than a manufactured home subject to local property tax)? ☐ Yes ☐ No
- If yes, enter the value of the personal property included in the purchase price $ _____ (Attach itemized list of personal property.)

D. IS A MANUFACTURED HOME INCLUDED IN PURCHASE PRICE? ☐ Yes ☐ No
- If yes, how much of the purchase price is allocated to the manufactured home? $ _____
- Is the manufactured home subject to local property tax? ☐ Yes ☐ No   What is the decal number? _____

E. DOES THE PROPERTY PRODUCE INCOME? ☐ Yes ☐ No   If yes, is the income from:
- ☐ Lease/Rent    ☐ Contract    ☐ Mineral rights    ☐ Other (please explain): _____

F. WHAT WAS THE CONDITION OF THE PROPERTY AT THE TIME OF SALE?
- ☐ Good     ☐ Average     ☐ Fair     ☐ Poor
- Please explain the physical condition of the property and provide any other information (such as restrictions, etc.) that would assist the Assessor in determining the value of the property: _____

## CERTIFICATION

| OWNERSHIP TYPE (☑) | |
| --- | --- |
| Proprietorship ☐ | *I certify that the foregoing is true, correct and complete to the best of my knowledge and belief.* |
| Partnership ☐ | *This declaration is binding on each and every co-owner and/or partner.* |
| Corporation ☐ | |
| Other ☐ | |

| NAME OF NEW OWNER/CORPORATE OFFICER | TITLE |
| --- | --- |
| Stephanie Spurlock | Agent |
| SIGNATURE OF NEW OWNER/CORPORATE OFFICER | DATE |
| *[signature]* | 3/6/2014 |
| NAME OF ENTITY (typed or printed) | FEDERAL EMPLOYER ID NUMBER |
| Western Progressive | |
| ADDRESS (typed or printed) | E-MAIL ADDRESS (optional) | DATE |
| 2002 Summit Blvd Ste 600, Atlanta, GA 30319 | | 3/6/2014 |

(NOTE: The Assessor may contact you for additional information.)

If a document evidencing a change of ownership is presented to the recorder for recordation without the concurrent filing of a preliminary change of ownership report, the recorder may charge an additional recording fee of twenty dollars ($20).

# EXHIBIT D

# EXHIBIT D

AFFIDAVIT OF MAILING

Type of Mailing:

☐ 10 Day Mail    ☐ 30 Day Mail    ☐ NTS Mail    ☐ IRS Lien

☒ Surplus Letter    ☐ Notice of Intent    ☐ Sale Postponement Letter

**Law Offices of Les Zieve**

Date: 5/9/2014

T.S. No.: 2012-24485

Loan No.:706076957

STATE OF **California**          }
COUNTY OF **Orange**

The Affiant, whose signature appears below, states that (s)he is over the age of eighteen (18) years; is not a party to the within action; is employed in Orange County, **California**; and at the request of **Law Offices of Les Zieve**, deposited or caused to be deposited  the Notice of Surplus Excess Proceeds of which the annexed is a true copy, in the United States Mail a copy of such Notice of Surplus Excess Proceeds in a sealed envelope, certified or registered mail and first class, with postage prepaid, such envelope being addressed to the person(s) named at the addresses below.

Tony Tenerelli
1442 N. Quincy Way
Upland, CA 91786

Stephanie Tenerelli
1442 N. Quincy Way
Upland, CA 91786

Tony Tenerelli
1334 North 2nd Avenue
Upland, CA 91786

Stephanie Tenerelli
1334 North 2nd Avenue
Upland, CA 91786

Ocwen Loan Servicing LLP
1661 Worthington Rd Ste 100
West Palm Beach, FL 33409

Tony Tenerelli
1661 Worthington Rd Ste 100
West Palm Beach, FL 33409

Stephanie Tenerelli
1661 Worthington Rd Ste 100
West Palm Beach, FL 33409

Law Office of Steve S. Gohari
2182 Dupont Dr. Ste 17
Irvine, CA 92606

IRS
24000 Avila Rd., M./S 5905
Laguna Niguel, CA 92677

X *d. Martinez*
Daniella Martinez

Law Offices of Les Zieve
30 Corporate Park, Suite 450
Irvine, California 92606
Phone: 714-848-7920 Fax: 714-848-7650

Dated: May 9, 2014

VIA CERTIFIED 1ST CLASS MAIL
RETURN RECEIPT REQUESTED

Re:    NOTICE OF SURPLUS PROCEEDS
       Servicer:                Ocwen  Loan Servicing
       Property Address:        1334 North 2nd Avenue
                                Upland, CA 91786
       Trustor:                 Tony and Stephanie Tenerelli
       Trustee Sale Number:     2012-24485

## NOTICE OF PROCEEDS OF SALE

Dear Sir/Madame:

Law Offices of Les Zieve represents Western Progressive, LLC as successor trustee, which conducted a Trustee's Sale hereinafter ("Sale") on February 25, 2014 for the above referenced property. The property was purchased by a third-party at that Sale and the proceeds from the Sale exceeded the amount of the foreclosure and the indebtedness owed to the foreclosing beneficiary.

At the time of the Sale, you were listed as having an interest in the subject property which was extinguished by the foreclosure sale. You may, therefore, have a claim to all or a portion of the Sale proceeds remaining. If you wish to pursue any potential claim, you must send this office a claim, under penalty of perjury, specifying the amount of the claim to the date of the Trustee Sale, including an itemized statement of principal, interest and other charges as of the date of the foreclosure. The claim must be received by this office no later than **thirty (30) days** from the date of this Notice. For your convenience, an Affidavit of Claim has been provided.

NOTICE IS HEREBY GIVEN that you may be required to present proof that you hold an interest in the obligation and the security interest therefore.

Please be advised, in the event we do not hear from you within thirty (30) days of the date of this letter, we may disburse the proceeds to claimants in the order of priority of the written claims submitted to our office as trustee, or if priority is disputed, we may deposit the surplus funds with the superior court and request recovery of any reasonable attorney's fees and costs incurred as a result thereof. Please note that all claimants will be paid in order of their priority against the property. Your claim is not necessarily one that will be paid.

Very Truly Yours,

Law Offices of Les Zieve

Shari Geiger
sgeiger@zievelaw.com

Enclosure: Affidavit of Claim

Trustor:

TS #

## AFFIDAVIT OF CLAIM FOR SURPLUS FUNDS
## (Prior Owner)

The undersigned, _____ being first duly sworn, depose(s) and say(s):

1. The undersigned was/were the owner of the real property located at _____ (the "Property").

2. A claim is hereby made for the remaining surplus funds, or for as much of said surplus funds as is available after payment of all prior liens and encumbrances against the Property.

3. I (we) represent(s) that I (we) may be entitled to all or a part of the surplus funds generated from that certain trustee sale that occurred on ,

4. I (we) represent(s) and warrant(s) to Law Offices of Les Zieve ("LOLZ"): (a) I (we) was (were) the owners of the Property described above on the date of the foreclosure sale; (b) I (we) have not assigned, transferred my (our) interest as owner(s) to any third person or executed any power of attorney in favor of any third person giving said third person a right or interest in said Property or surplus funds; (c) I (we) am (are) not aware of any judgment, lien(s) or abstract(s) recorded against the Property within the past ten years, nor am (are) I (we) liable under any Family Support Order under the Family Law Code or under any tax lien, state or federal, recorded against the Property.

5. I (we) acknowledge(s) that the specific purpose of this Statement of Claim is to induce LOLZ to release funds to me/us. The surplus funds check is to be made payable in the name below and mailed to the following address:

   Name(s): _____
   Mailing address: _____
   _____
   Phone Number: _____
   E-Mail _____

6. I (we) acknowledge(s) that in the event any information I have provided to LOLZ is incorrect or untrue, I (we) will become obligated to any judgment creditor or lienholder, and to LOLZ, for any funds I (we) receive or obligations that LOLZ or a lien claimant incurs collecting these surplus funds from me/us in the future, including any legal fees LOLZ incurs in requiring me to repay the surplus funds to a third party, regardless of whether a lawsuit is filed to obtain the funds.

**Copy of Driver's License or Passport must be attached for each claimant.**

Trustor:

TS #

I (we) am (are) authorized to execute this affidavit and am (are) over the age of eighteen years old.  I declare under penalty of perjury that the foregoing is true and correct.

Executed this ___ day of _____, 20___ at _____.

_____          _____
PRINT NAME                                                      SIGNATURE

_____          _____
PRINT NAME                                                      SIGNATURE

State of                               )
County of                           ) ss

On_____ before me, _____, a Notary Public, personally appeared _____, who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his authorized capacity, and that by his signature on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.  I certify under PENALTY OF PERJURY under the laws of the State of _____ that the foregoing paragraph is true and correct.

WITNESS my hand and Official Seal

_____
Notary Public in and for said State

Trustor:

TS #

# AFFIDAVIT OF CLAIM FOR SURPLUS FUNDS
## (Junior Lienholder)

TS #

The undersigned, _____ being first duly sworn, depose(s) and say(s):

1. The undersigned is the _____ under a
   _____ dated _____ and recorded on _____ in Book
   _____, Page _____ instrument no. _____ of the Official
   Records of _____ County, State of _____.

2. As of the date hereof, the undersigned has not been paid in full the amount of its claim under the said
   _____.

3. Claim is hereby made in the total amount of $_____. This figure represents unpaid principal,
   interest, late charges and any allowable costs or expenses, as of the date of the trustee sale (Attach an
   itemized accounting of the amount claimed as of the date of sale).

4. I (we) acknowledge(s) that in the event any information I have provided to Law Offices of Les Zieve
   (LOLZ) is incorrect or untrue, I (we) will become obligated to repay the surplus funds to LOLZ.

I am authorized to execute this affidavit and am over the age of eighteen years old. I declare under penalty of
perjury that the foregoing is true and correct. *I (we) hold harmless and will release and discharge* Law
Offices of Les Zieve and Western Progressive, LLC *from any and all unsuspected claims, demands and
causes of action that may occur, if any.*

Executed this ___ day of _____, 20___ at _____.

By: _____        By:_____

State of                              )
County of                             ) ss

On_____ before me, _____ personally appeared _____,
who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument
and acknowledged to me that he executed the same in his authorized capacity, and that by his signature on the instrument
the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument. I certify under
PENALTY OF PERJURY under the laws of the State of _____ that the foregoing paragraph is true
and correct.

WITNESS my hand and Official Seal.

_____
Notary Public in and for said State

# EXHIBIT E

# EXHIBIT E



**WESTCOR**
LAND TITLE INSURANCE COMPANY

GUARANTEE NO.
TSG-7-CA1010-2818128

## TRUSTEE'S SALE GUARANTEE

SUBJECT TO THE EXCLUSIONS FROM COVERAGE AND THE CONDITIONS ATTACHED HERETO AND MADE A PART OF THIS GUARANTEE,

### WESTCOR LAND TITLE INSURANCE COMPANY,

a corporation, herein called the Company

### GUARANTEES

The Assured named in Schedule A of this Guarantee

against loss or damage not exceeding the liability amount stated in Schedule A sustained by the Assured by reason of any incorrectness in the assurances set forth in Paragraph 3 of Schedule A.

### SCHEDULE A
### IS ATTACHED HERETO AS A SEPARATE PAGE AND MADE A PART OF THIS GUARANTEE

*In Witness Whereof*, WESTCOR LAND TITLE INSURANCE COMPANY, has caused this Guarantee to be signed and sealed as of Date of Guarantee shown in Schedule A.

Issued By:
CA1010 * TSG1210-CA-450922
Premium Title of California, Inc.
100 Pacifica, Suite 205
Irvine, CA 92618

WESTCOR LAND TITLE INSURANCE COMPANY

By: *Mary O'Dann&M*
President

Attest: *Patricia N Power*
Secretary

**NOTE: This Guarantee is of no force and effect unless Schedule A is signed and attached together with any added pages incorporated by reference.**

TSG-7 CA Trustee's Sale Guarantee – CLTA Form No. 22 (11-04-11) - CALIFORNIA

(WLTIC Edition Date 12/15/11)

## WESTCOR LAND TITLE INSURANCE COMPANY
## EXCLUSIONS FROM COVERAGE

1. Except to the extent of the assurances set forth in Paragraph 3 of Schedule A, the Company assumes no liability for loss or damage by reason of any law, ordinance, governmental regulation or any other police power adopted or promulgated by any federal or state government authority purporting to regulate non-judicial foreclosures or any related duties, whether or not disclosed by the Public Records at the Date of Guarantee.

2. Notwithstanding any assurances set forth in Paragraph 3 of Schedule A, the Company assumes no liability for loss or damage by reason of the following:

   a. Defects, liens, encumbrances, adverse claims or other matters affecting the title to any property beyond the lines of the Land expressly described in the description set forth in Schedule A of this Guarantee, or title to streets, roads, avenues, lanes, ways or waterways to which such Land abuts, or the right to maintain therein vaults, tunnels, ramps or any structure or improvements; or any rights or easements therein, unless such property, rights or easements are expressly and specifically set forth in said description.

   b. Defects, liens, encumbrances, adverse claims or other matters, whether or not shown by the Public Records (1) that are created, suffered, assumed or agreed to by one or more of the Assureds; (2) that result in no loss to the Assured; or (3) that do not result either in the invalidity of any non-judicial proceeding to foreclose the lien of the Mortgage or the failure of any such non-judicial foreclosure proceeding to divest a lien, estate or interest subordinate or subject to the lien of the Mortgage.

   c. Defects, liens, encumbrances, adverse claims or other matters against the title, not shown by the Public Records.

   d. The identity of any party shown or referred to in Schedule A.

   e. The validity, legal effect or priority of any matter shown or referred to in this Guarantee.

   f. Any law, ordinance, governmental regulation or any other police power adopted or promulgated by any county, city, or any other local government authority purporting to regulate non-judicial foreclosures or any related duties, whether or not disclosed by the Public Records at the Date of Guarantee.

   g. (1) Taxes or assessments of any taxing authority that levies taxes or assessments on real property; or, (2) proceedings by a public agency which may result in taxes or assessments, or notices of such proceedings, whether or not the matters excluded under (1) or (2) are shown by the records of the taxing authority or by the Public Records.

   h. (1) Unpatented mining claims; (2) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (3) water rights, claims or title to water, whether or not the matters excluded under (1), (2) or (3) are shown by the Public Records.

## INFORMATIONAL NOTES

No assurances as set forth in Paragraph 3 of Schedule A are provided in connection with the following information and the Company assumes no liability for any inaccuracies in or omissions from the information. This information is not intended to be comprehensive and does not necessarily include all laws and regulations that might affect the contemplated foreclosure.

1. Attention is called to the Servicemembers Civil Relief Act (Appendix 50 USC §§501 et seq.), and any amendments thereto and the Military Reservist Relief Act of 1991 (California Military and Veterans Code §§ 800 et seq.) and any amendments thereto that contain restrictions against the sale of land under a deed of trust or mortgage if the owner is entitled to the benefits of those Acts.

2. Attention is called to the Federal Tax Lien Act of 1966 (26 USC §§ 6321 et seq.), and any amendments thereto that, among other things, provides for the giving of written notice of sale in a specified manner to the Secretary of Treasury or his or her delegate as a requirement for the discharge or divestment of a Federal Tax Lien in a non-judicial sale, and establishes with respect to that lien a right in the United States to redeem the property within a period of 120 days from the date of the sale.

3. Attention is called to California Government Code § 16187, and any amendments thereto, that, among other things, provides for the giving of written notice of sale in a specified manner to the Controller of the State of California necessary for the discharge or divestment in a non-judicial sale of a Notice of Lien for Postponed Property Taxes recorded in the public records subsequent to the recording of a notice of default.

4. Attention is called to California Civil Code § 2923.5, and any amendments thereto, that applies to loans made from January 1, 2003 to December 31, 2007 secured by deeds of trust on owner-occupied residential property and that, among other things, states that a notice of default may not be recorded pursuant to California Civil Code § 2924 until 30 days after initial contact with the borrower of a prescribed and detailed nature is made or after satisfying

certain due diligence requirements. A special declaration with respect to the initial contact must be attached to or made a part of a notice of default. Reference is made to the statute for particulars.

5. Attention is called to *California Civil Code § 2924.8*, and any amendments thereto, that applies to notes secured by deeds of trust on residential real property, if the billing address for the mortgage note is different than the property address, and that, among other things, requires the posting of a prescribed notice of impending foreclosure in several designated languages and the mailing of that notice in a prescribed manner, which posting and mailing are to occur concurrently with posting and mailing of notice of sale pursuant to *California Civil Code § 2924f*. A copy of that notice may be obtained from the State of California Department of Financial Institutions. Reference is made to the statute for particulars.

6. Attention is called to *California Civil Code § 2924b (d)*, and any amendments thereto, that requires alternative notice procedures if the mortgage or deed of trust does not contain a mailing address of the trustor or mortgagor.

*[The inclusion, arrangement and language of the matters shown in the above Informational Notes to be in accordance with the practices of the issuing member company.]*

## TRUSTEE'S SALE GUARANTEE CONDITIONS

1. **Definition of Terms.**

   The following terms when used in the Guarantee mean:

   a. the "Assured": (i) the party or parties named as the Assured in Schedule A, or on a supplemental writing executed by the Company, (ii) the duly substituted trustee of the Mortgage and (iii) the owner of the indebtedness or other obligation secured by the Mortgage.

   b. "Land": the Land described or referred to in Schedule A, and improvements affixed thereto which by law constitute real property. The term "Land" does not include any property beyond the lines of the area described or referred to in Schedule A, nor any right, title, interest, estate or easement in abutting streets, roads, avenues, alleys, lanes, ways or waterways.

   c. "Mortgage": the mortgage, deed of trust, trust deed, or other security instrument set forth in Paragraph 3.d. of Schedule A.

   d. "Public Records": those records established under California statutes at Date of Guarantee for the purpose of imparting constructive notice of matters relating to real property to purchasers for value and without knowledge.

   e. "Date of Guarantee": the Date of Guarantee set forth in Schedule A

2. **Notice of Claim to be Given by Assured.**

   The Assured shall notify the Company promptly in writing in case knowledge shall come to the Assured of any assertion of facts, or claims of title or interest that are contrary to the assurances set forth in Paragraph 3 of Schedule A and that might cause loss or damage for which the Company may be liable under this Guarantee. If prompt notice shall not be given to the Company, then all liability of the Company shall terminate with regard to the matter or matters for which prompt notice is required;

provided, however, that failure to notify the Company shall in no case prejudice the rights of the Assured under this Guarantee unless the Company shall be prejudiced by the failure and then only to the extent of the prejudice.

3. **No Duty to Defend or Prosecute.**

   The Company shall have no duty to defend or prosecute any action or proceeding to which the Assured is a party, notwithstanding the nature of any allegation in such action or proceeding.

4. **Company's Option to Defend or Prosecute Actions; Duty of Assured to Cooperate.**

   Even though the Company has no duty to defend or prosecute as set forth in Paragraph 3 above:

   a. The Company shall have the right, at its sole option and cost, to institute and prosecute any action or proceeding, interpose a defense, as limited in Paragraph 4.b. or to do any other act which in its opinion may be necessary or desirable to establish the correctness of the assurances set forth in Paragraph 3 of Schedule A or to prevent or reduce loss or damage to the Assured including, but not limited to, repeating the trustee's sale proceeding. The Company may take any appropriate action under the terms of this Guarantee, whether or not it shall be liable hereunder, and shall not thereby concede liability or waive any provision of this Guarantee. If the Company shall exercise its rights under this paragraph, it shall do so diligently.

   b. If the Company elects to exercise its options as stated in Paragraph 4.a. the Company shall have the right to select counsel of its choice (subject to the right of the Assured to object for reasonable cause) to represent the Assured and shall not be liable for and will not pay the fees of any other counsel, nor will the Company pay any fees, costs or expenses incurred by the Assured in the defense of those causes of action which allege matters not covered by this Guarantee.

c. Whenever the Company shall have brought an action or interposed a defense as permitted by the provisions of this Guarantee, the Company may pursue any litigation to final determination by a court of competent jurisdiction and expressly reserves the right, in its sole discretion, to appeal from an adverse judgment or order.

d. In all cases where this Guarantee permits the Company to prosecute or provide for the defense of any action or proceeding, the Assured shall secure to the Company the right to prosecute or provide for the defense of any action or proceeding, and all appeals therein, and permit the Company to use, at its option, the name of the Assured for this purpose. Whenever requested by the Company, the Assured, at the Company's expense, shall give the Company all reasonable aid in any action or proceeding, securing evidence, obtaining witnesses, prosecuting or defending the action or lawful act which in the opinion of the Company may be necessary or desirable to establish the correctness of the assurances set forth in Paragraph 3 of Schedule A. If the Company is prejudiced by the failure of the Assured to furnish the required cooperation, the Company's obligations to the Assured under the Guarantee shall terminate.

5. **Proof of Loss or Damage.**

a. In addition to and after the notices required under Section 2 of these Conditions have been provided to the Company, a proof of loss or damage signed and sworn to by the Assured shall be furnished to the Company within ninety (90) days after the Assured shall ascertain the facts giving rise to the loss or damage. The proof of loss or damage shall describe the matters covered by this Guarantee which constitute the basis of loss or damage and shall state, to the extent possible, the basis of calculating the amount of the loss or damage. If the Company is prejudiced by the failure of the Assured to provide the required proof of loss or damage, the Company's obligation to the Assured under the Guarantee shall terminate.

b. The Company may reasonably require the Assured to submit to examination under oath by any authorized representative of the Company and to produce for examination, inspection, and copying, at such reasonable times and places as may be designated by the authorized representative of the Company, all records, in whatever medium maintained, including books, ledgers, checks, memoranda, correspondence, reports, e-mails, disks, tapes, and videos whether bearing a date before or after Date of Guarantee, that reasonably pertain to the loss or damage. Further, if requested by any authorized representative of the Company, the Assured shall grant its permission, in writing, for any authorized representative of the Company to examine,

inspect, and copy all of these records in the custody or control of a third party that reasonably pertain to the loss or damage. All information designated as confidential by the Assured provided to the Company pursuant to this Section shall not be disclosed to others unless, in the reasonable judgment of the Company, it is necessary in the administration of the claim. Failure of the Assured to submit for examination under oath, produce any reasonably requested information, or grant permission to secure reasonably necessary information from third parties as required in this subsection, unless prohibited by law or governmental regulation, shall terminate any liability of the Company under this Guarantee as to that claim.

6. **Options to Pay or Otherwise Settle Claims: Termination of Liability.**

In case of a claim under this Guarantee, the Company shall have the following additional options:

a. To Pay or Tender Payment of the Amount of Guarantee or to Purchase the Indebtedness.

i. To pay or tender payment of the full amount of this Guarantee together with any costs, attorneys' fees, and expenses incurred by the Assured that were authorized by the Company up to the time of payment or tender of payment and that the Company is obligated to pay; or

ii. To purchase the indebtedness secured by the Mortgage for the amount owing thereon, together with any costs, attorneys' fees, and expenses incurred by the Assured that were authorized by the Company up to the time of purchase and that the Company is obligated to pay.

When the Company so purchases such indebtedness, the owner thereof shall transfer, assign, and convey to the Company the indebtedness and the Mortgage, together with any collateral security.

Upon the exercise by the Company of either of the options provided for in Paragraphs 6.a.i. or 6.a.ii., all liability and obligations of the Company to the Assured under this Guarantee, other than to make the payment required in those paragraphs, shall terminate, including any duty to continue any and all litigation initiated by Company pursuant to Paragraph 4.

b. To Pay or Otherwise Settle With Parties Other Than the Assured or With the Assured.

i. To pay or otherwise settle with other parties for or in the name of an Assured any claim assured against under this Guarantee. In addition, the Company will pay any costs, attorneys' fees, and expenses

incurred by the Assured that were authorized by the Company up to the time of payment and that the Company is obligated to pay; or

ii. To pay or otherwise settle with the Assured the loss or damage provided for under this Guarantee, together with any costs, attorneys' fees, and expenses incurred by the Assured that were authorized by the Company up to the time of payment and that the Company is obligated to pay.

Upon the exercise by the Company of either of the options provided for in Paragraphs 6. b.i. or 6.b.ii., the Company's obligations to the Assured under this Guarantee for the claimed loss or damage, other than the payments required to be made, shall terminate, including any duty to continue any and all litigation initiated by Company pursuant to Paragraph 4.

### 7.  Limitation of Liability.

This Guarantee is a contract of Indemnity against actual monetary loss or damage sustained or incurred by the Assured who has suffered loss or damage by reason of reliance upon the assurances set forth in Paragraph 3 of Schedule A and only to the extent herein described, and subject to the Exclusions From Coverage and Conditions of this Guarantee.

a.  The liability of the Company under this Guarantee to the Assured shall not exceed the least of :

   i.  the amount of liability stated in Schedule A;

   ii.  the amount of the unpaid principal indebtedness secured by the Mortgage as limited or as reduced under Paragraph 8 of these Conditions at the time the loss or damage assured against by this Guarantee occurs, together with interest thereon; or

   iii.  the difference between the value of the estate or interest set forth in Schedule A and the value of the estate or interest subject to any defect, lien, encumbrance or other matter assured against by this Guarantee.

b.  If the Company or the Assured under the direction of the Company at the Company's expense establishes the title, or removes the alleged defect, lien or, encumbrance or cures any other matter assured against by this Guarantee in a reasonably diligent manner by any method, including litigation and the completion of any appeals therefrom, it shall have fully performed its obligations with respect to that matter and shall not be liable for any loss or damage caused thereby.

c.  In the event of any litigation by the Company or with the Company's consent, the Company shall have no liability for loss or damage until there has been a final

determination by a court of competent jurisdiction, and disposition of all appeals therefrom.

d.  The Company shall not be liable for loss or damage to the Assured for liability voluntarily assumed by the Assured in settling any claim or suit without the prior written consent of the Company.

### 8.  Reduction of Liability or Termination of Liability.

All payments under this Guarantee, except payments made for costs, attorneys' fees and expenses pursuant to Paragraph 4 shall reduce the amount of liability pro tanto.

### 9.  Payment of Loss.

a.  No payment shall be made without producing this Guarantee for endorsement of the payment unless the Guarantee has been lost or destroyed, in which case proof of loss or destruction shall be furnished to the satisfaction of the Company.

b.  When liability and the extent of loss or damage has been definitely fixed in accordance with these Conditions the loss or damage shall be payable within thirty (30) days thereafter.

### 10. Subrogation Upon Payment or Settlement.

Whenever the Company shall have settled and paid a claim under this Guarantee, all right of subrogation shall vest in the Company unaffected by any act of the Assured.

The Company shall be subrogated to and be entitled to all rights and remedies which the Assured would have had against any person or property in respect to the claim had this Guarantee not been issued. If requested by the Company, the Assured shall transfer to the Company all rights and remedies against any person or property necessary in order to perfect this right of subrogation. The Assured shall permit the Company to sue, compromise or settle in the name of the Assured and to use the name of the Assured in any transaction or litigation involving these rights or remedies.

If a payment on account of a claim does not fully cover the loss of the Assured the Company shall be subrogated to all rights and remedies of the Assured after the Assured shall have recovered its principal, interest, and costs of collection.

### 11. Arbitration.

Either the Company or the Assured may demand that the claim or controversy shall be submitted to arbitration pursuant to the Title Insurance Arbitration Rules of the American Land Title Association ("Rules"). Except as provided in the Rules, there shall be no joinder or consolidation with claims or controversies of other persons. Arbitrable matters may include, but are not limited to, any controversy or claim between the Company

and the Assured arising out of or relating to this Guarantee, any service in connection with its issuance or the breach of a Guarantee provision, or to any other controversy or claim arising out of the transaction giving rise to this Guarantee. All arbitrable matters when the amount of liability in Schedule A is $2,000,000 or less shall be arbitrated at the option of either the Company or the Assured. All arbitrable matters when the amount of liability in Schedule A is in excess of $2,000,000 shall be arbitrated only when agreed to by both the Company and the Assured. Arbitration pursuant to this Guarantee and under the Rules shall be binding upon the parties. Judgment upon the award rendered by the Arbitrator(s) may be entered in any court of competent jurisdiction.

## 12. Liability Limited to This Guarantee; Guarantee Entire Contract.

a. This Guarantee together with all endorsements, if any, attached hereto by the Company is the entire Guarantee and contract between the Assured and the Company.

In interpreting any provision of this Guarantee, this Guarantee shall be construed as a whole.

b. Any claim of loss or damage, whether or not based on negligence, or any action asserting such claim, shall be restricted to this Guarantee.

c. No amendment of or endorsement to this Guarantee can be made except by a writing endorsed hereon or attached hereto signed by either the President, a Vice President, the Secretary, an Assistant Secretary, or validating officer or authorized signatory of the Company.

## 13. Notices, Where Sent.

All notices required to be given the Company and any statement in writing required to be furnished the Company shall include the number of this Guarantee and shall be addressed to the Company at: 201 N. New York Avenue, Suite 200, Winter Park, Florida 32789.



**Premium Title**
of California, Inc.

Premium Title of California, Inc.
100 Pacifica, Suite 205
Irvine, CA 92618
Phone: (855) 339-6325

---

## TRUSTEE'S SALE GUARANTEE
### ISSUED AT
### Westcor Land Title Insurance Company
### SCHEDULE A

Date of Guarantee: **September 24, 2012 at 8:00 A.M.**

Your Reference: **2012-24485**

Order No.: **TSG1210-CA-450922**
Liability: **$327,000.00**
Fee: **$910.40**

1.    Name of Assured:

     **Trustee:**

     **Western Progressive, LLC**

     **Beneficiary:**

     **Deutsche Bank National Trust Company, as Trustee under Pooling And Servicing Agreement Dated as of March 1, 2007 Securitized Asset-Backed Receivables LLC Trust 2007-BR1 Mortgage Pass-Through Certificates, Series 2007-BR1**

2.    The estate or interest in the land hereinafter described or referred to covered by this Guarantee is:

     **FEE SIMPLE**

3.    Assurances: According to the Public Records as of the Date of Guarantee,

     a.    Title to said estate or interest at the date hereof is vested in:

     **Tony Tenerelli and Stephanie Tenerelli, Husband and Wife as Joint Tenants**

     b.    The land referred to in this Guarantee is situated in the County of San Bernardino, State of California, and is identified as more particularly described in Exhibit "A" attached hereto and made a part hereof.

Issued By:    Premium Title of California, Inc.
                100 Pacifica, Suite 205
                Irvine, CA 92618

Countersigned Authorized Signatory

CLTA Guarantee Form No. 22

Page 1 of 7

TSG1210-CA-450922

# EXHIBIT "A"

**Real property in the City of Upland, County of San Bernardino, State of California, described as follows:**

LOT 11, TRACT 4616, IN THE CITY OF UPLAND, COUNTY OF SAN BERNARDINO, STATE OF CALIFORNIA, AS PER PLAT RECORDED IN BOOK 60, PAGES 8 AND 9 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

**Note:**   For information purposes only, the purported street address of said land as determined from the latest County Assessor's Roll is:

**1334 NORTH 2ND AVENUE, UPLAND, CA 91786**

The Assessor's Parcel Number, as determined from the latest County Assessor's Roll is:

**1045-372-22-0-000**

An inspection of said land has not been made, and no assurances are hereby given or implied as to the location of the land herein described.

TSG1210-CA-450922

# TRUSTEE'S SALE GUARANTEE
## SCHEDULE B

### EXCEPTIONS:

The title to said estate or interest is subject to the following Exceptions:

1. Property taxes, including general and special taxes, personal property taxes, if any, and any assessments collected with taxes, to be levied for the fiscal year 2012-2013 which are a lien not yet payable.

2. Property taxes, including general and special taxes, personal property taxes, if any, and any assessments collected with taxes, for the fiscal year 2011-2012.

| | |
|---|---|
| 1st Installment: | $1,979.46 Paid |
| 2nd Installment: | $1,979.43 Paid |
| Code Area: | 008-001 |
| Assessment No.: | 1045-372-22-0-000 |

3. Supplemental or escaped assessments of property taxes, if any, assessed pursuant to the Revenue and Taxation Code of the State of California.

4. Supplemental taxes, assessed pursuant to the provisions of Chapter 3.5 (commencing with Section 75) of the Revenue and Taxation Code, of the State of California, for the fiscal year 2011-2012.

| | |
|---|---|
| 1st Installment: | $-5.95 |
| Penalty: | $0.00 |
| 2nd Installment: | $-5.93 |
| Penalty: | $0.00 |
| Supplemental Bill No: | Not Set Out |

5. A deed of trust to secure an indebtedness in the amount shown below, and any other obligations secured thereby.

| | |
|---|---|
| Amount: | $424,000.00 |
| Dated: | November 1, 2006 |
| Trustor: | Tony Tenerelli and Stephanie Tenerelli, Husband and Wife as Joint Tenants |
| Trustee: | First American Title |
| Lender: | New Century Mortgage Corporation |
| Beneficiary: | Mortgage Electronic Registration Systems, Inc. |
| Recorded: | November 9, 2006 Instrument/File No. 2006-0766821 of Official Records |

**Note: The Legal Description is Considered from Deed of Trust**

A Notice of Default under the terms of said deed of trust

| | |
|---|---|
| Recorded: | October 13, 2009 Instrument/File No. 2009-0447200 of Official Records |

CLTA Guarantee Form No. 22

TSG1210-CA-450922

An assignment of the beneficial interest under said deed of trust which names

As Assignee:                Deutsche Bank National Trust Company, as Trustee under Pooling And
                            Servicing Agreement Dated as of March 1, 2007 Securitized Asset-Backed
                            Receivables LLC Trust 2007-BR1 Mortgage Pass-Through Certificates, Series
                            2007-BR1
Recorded:                   March 5, 2010 Instrument/File No. 2010-0088274 of Official Records

A substitution of trustee under said deed of trust which names as the substituted trustee, the following

Trustee:                    Old Republic Default Management Services, a Division of Old Republic National
                            Title Insurance Company
Recorded:                   March 5, 2010 Instrument/File No. 2010-0088275 of Official Records

6. A tax lien for the amount shown and any other amounts due, in favor of the United States of America,
assessed by the District Director of Internal Revenue.

Federal Serial No.:         836064911
Taxpayer:                   Tony Tenerelli
Amount:                     $37,369.00 Plus Penalty and Cost
Recorded:                   December 20, 2011 Instrument/File No. 2011-0539002 of Official Records

7. A tax lien for the amount shown and any other amounts due, in favor of the United States of America,
assessed by the District Director of Internal Revenue.

Federal Serial No.:         880805012
Taxpayer:                   Tony Tenerelli
Amount:                     $24,043.50 Plus Penalty and Cost
Recorded:                   August 2, 2012 Instrument/File No. 2012-0309103 of Official Records

8. Water rights, claims or title to water, whether or not shown by the public records.

9. Any bankruptcy proceeding that is not disclosed by the acts that would afford notice as to said land,
pursuant to Title 11 U.S.C. 549 (c) of the Bankruptcy Reform Act of 1978, as amended.

CLTA Guarantee Form No. 22

Page 4 of 7

TSG1210-CA-450922

**TRUSTEE'S SALE GUARANTEE**
**SCHEDULE C**
**INFORMATION FOR TRUSTEE**

**Relative to the Deed of Trust shown as Exception No. 5 in Schedule B.**

1. City in which said land is located: **Upland**

If not in a city, judicial district in which said land is located: None

2. Attention is called to the Soldier's and Sailor's Civil Relief Act of 1940 and amendments thereto and The Military Reservist Relief Act of 1991 (Sec. 800 to 810, Military and Veterans Code) which contain inhibitions against the sale of land under a deed of trust if the owner is entitled to the benefits of said Acts.

3. Attention is called to the Federal Tax Lien Act of 1966 (Public Law 89-719) which, among other things, provides for the giving of written Notice of Sale in a specified manner to the Secretary of Treasury or his or her delegate as a requirement for the discharge or divestment of a Federal Tax Lien in a non-judicial sale, and establishes with respect to such lien a right in the United States to redeem the property within a period of 120 days from the date of any such sale.

4. The names and addresses of persons who have recorded requests, as provided by Section 2924b (a) and (d) of the Civil Code, for a copy of Notice of Default and for a copy of Notice of Sale are:

Tony Tenerelli
1442 N. Quincy Way,
Upland, CA 91786

Stephanie Tenerelli
1442 N. Quincy Way,
Upland, CA 91786

5. The names and addresses of additional persons who, as provided by Section 2924b (c)(1) and (2) of the Civil Code, are entitled to receive a copy of Notice of Default and a copy of Notice of Sale are:

Tony Tenerelli
1334 North 2nd Avenue
Upland, California 91786

Stephanie Tenerelli
1334 North 2nd Avenue
Upland, California 91786

Ocwen Loan Servicing LLP
1661 Worthington Rd Ste 100
West Palm Beach, FL 33409

Tony Tenerelli
1661 Worthington Rd Ste 100
West Palm Beach, FL 33409

Stephanie Tenerelli
1661 Worthington Rd Ste 100
West Palm Beach, FL 33409

CLTA Guarantee Form No. 22

TSG1210-CA-450922

6. NOTE: The names of persons and addresses disclosed by the records examined, other than those to whom notice is required by Section 2924b of the Civil Code to be directed, who might be interested in receiving a copy of the Notice of Default and a copy of the Notice of Trustees Sale are:

None

7. The names and addresses of state taxing agencies which, as provided by Section 2924b (c)(3) of the Civil Code, are entitled to receive a copy of Notice of Sale are:

None

8. The addresses of the Internal Revenue Service which, as provided by Section 2924b (c) (4) of the Civil Code, are entitled to receive a copy of Notice of Sale are:

IRS Advisory Group at:
24000 Avila Rd., M/S 5905
Laguna Niguel, CA 92677

9. Legal Publications:

**CITY NEWS-UPLAND**

Attention is called to SB 1137 (California Civil Code Section 2923.5)and any amendments thereto, which, among other things requires the Mortgagee, Trustee, Beneficiary or Authorized Agent, to contact homeowners to explore restructuring options before initiating the nonjudicial foreclosure process. The statute became operative on September 6, 2008 and applies to loans made from January 1, 2003 to December 31, 2007, secured by deeds of trust on owner-occupied residential property. A special declaration must be attached to or made a part of a Notice of Default recorded on or after September 8, 2008. If a Notice of Default was recorded prior to September 8, 2008, a Notice of Sale must also include the special declaration which confirms that the Mortgagee, Trustee, Beneficiary, or Authorized Agent, has complied with the due diligence requirements in contacting the borrower or that the borrower has surrendered the property.

CLTA Guarantee Form No. 22

Page 6 of 7



# EXHIBIT F

# EXHIBIT F

Trustor:

TS #

## AFFIDAVIT OF CLAIM FOR SURPLUS FUNDS
## (Prior Owner)

The undersigned, <u>TONY & STEPHANIE TENERELLI</u>  being first duly sworn, depose(s) and say(s):

1. The undersigned was/were the owner of the real property located at <u>1334 NORTH 2ND AVE.</u> (the "Property"). <span style="float:right">UPLAND, CA.91786</span>

2. A claim is hereby made for the remaining surplus funds, or for as much of said surplus funds as is available after payment of all prior liens and encumbrances against the Property.

3. I (we) represent(s) that I (we) may be entitled to all or a part of the surplus funds generated from that certain trustee sale that occurred on .

4. I (we) represent(s) and warrant(s) to Law Offices of Les Zieve ("LOLZ"): (a) I (we) was (were) the owners of the Property described above on the date of the foreclosure sale; (b) I (we) have not assigned, transferred my (our) interest as owner(s) to any third person or executed any power of attorney in favor of any third person giving said third person a right or interest in said Property or surplus funds; (c) I (we) am (are) not aware of any judgment, lien(s) or abstract(s) recorded against the Property within the past ten years, nor am (are) I (we) liable under any Family Support Order under the Family Law Code or under any tax lien, state or federal, recorded against the Property.

5. I (we) acknowledge(s) that the specific purpose of this Statement of Claim is to induce LOLZ to release funds to me/us. The surplus funds check is to be made payable in the name below and mailed to the following address:

   Name(s): <u>TONY & STEPHANIE TENERELLI</u>
   Mailing address: <u>2182 DUPONT DR. SUITE 17 IRVINE, CA 92612</u>

   Phone Number: <u>949-333-0458</u>
   E-Mail <u>MARKAKARNESJR@GOHARILAWGROUP.COM</u>

6. I (we) acknowledge(s) that in the event any information I have provided to LOLZ is incorrect or untrue, I (we) will become obligated to any judgment creditor or lienholder, and to LOLZ, for any funds I (we) receive or obligations that LOLZ or a lien claimant incurs collecting these surplus funds from me/us in the future, including any legal fees LOLZ incurs in requiring me to repay the surplus funds to a third party, regardless of whether a lawsuit is filed to obtain the funds.

**Copy of Driver's License or Passport must be attached for each claimant.**

Trustor:

TS #

I (we) am (are) authorized to execute this affidavit and am (are) over the age of eighteen years old.  I declare under penalty of perjury that the foregoing is true and correct.

Executed this 18 day of May , 2014 at Pomona, CA .

_Tony Tenerelli_
PRINT NAME

_(signature)_
SIGNATURE

_Stephanie Tenerelli_
PRINT NAME

_(signature)_
SIGNATURE

State of California )
County of Los Angeles ) ss

On May 18 2014 before me, Laura Gamez notary public , a Notary Public, personally appeared Tony Tenerelli and Stephanie Tenerelli , who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his authorized capacity, and that by his signature on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.  I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and Official Seal

_Laura Gamez_ notary public
Notary Public in and for said State



**CALIFORNIA ALL PURPOSE ACKNOWLEDGMENT**

STATE OF CALIFORNIA

COUNTY OF _Los Angeles_

On _May 18 2014_ before me,

_Laura Gamez notary public_
(here insert name and title of the officer)

, notary public, personally appeared _Tony Tenerelli_
_and Stephanie Tenerelli_
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the state of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal

Signature _Laura Gamez_

> LAURA GAMEZ
> Commission # 2064246
> Notary Public • California
> San Bernardino County
> My Comm. Expires May 2, 2018

(This area for official notarial seal)

——————————— *Optional* ———————————

.Though the information below is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent removal and reattachment of this form to another document.

**Description of Attached Document**

Title or Type of Document:
_Affidavit of claim for surplus funds._

Document Date: _5/18/2014_

Number of Pages: _1_      (Not including this page)

Signer(s) Other Than Named Above:  _0_

# EXHIBIT G

# EXHIBIT G

JUL-10-2014  14:33        ESTATE TAX LGN                        949 389 5063      P.01

# FAX Transmission
# Cover Sheet

RECEIVED

Time: _____ 2:36

By: _____ u

JUL 1 0 2014

Date: 07/10/14

DELIVERED TO: Shami

DATE DEL'D: _____

TIME DEL'D: _____

**To:** Attn: Mike Aleali                              Mail Stop: _____

Address/Organization: Law Offices of Les Zieve

FAX Number: 714-848-7650                    Office Phone: _____

**From:** Advisory Group 5                            Mail Stop: _____

Address/Organization: IRS

FAX Number: 949-389-5063                    Office Phone: _____

Number of pages:   | 2 |     *Including cover sheet*

*Please visit us on the intranet at http://publish.no.irs.gov to obtain information about every nationally numbered product published by the Internal Revenue Service. If you are not an IRS employee, visit the IRS homepage at www.irs.gov to obtain current information about the IRS and its service.*

This communication is intended for the sole use of the individual to whom it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of this communication is not the intended recipient or the employee or agent for delivering the communication to the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication may be strictly prohibited. If you have received this communication in error, please notify the sender immediately by telephone call, and return the communication at the address above via the United States Postal Service. Thank you.

Form **10321** (3-2007)        Catalog Number 23436C        Department of the Treasury-Internal Revenue Service
                                                            publish.no.irs.gov

JUL-18-2014  14:33      ESTATE TAX LGN                    949 389 5063      P.02

| Form **10492**<br>(Rev. November 2007) | Department of the Treasury — Internal Revenue Service<br># **Notice of Federal Taxes Due** | Escrow or Docket number |
|---|---|---|

To (Name of Escrow Holder, Agent of Taxpayer, or Fiduciary)

**Law Offices of Les Zieve, Attn: Mike Aleall**

Escrow or Docket number: **2012-24485**

Amount due: **$ 80,528.33**

Address (Number, Street, P.O. Box, City, State, ZIP code)

**30 Corporate Park, Suite 450, Irvine, CA 92606**

You are hereby notified that there is now due, owing, and unpaid from —

Name of taxpayer **Tony Tencralli**

Address (Number, Street, P.O. Box, City, State, ZIP code)

**154-A West Foothill Blvd Box 186, Upland, CA 91786-3847**

to the United States of America, the sum of **$80,528.33**
for Internal Revenue taxes secured by a lien pursuant to Internal Revenue Code (IRC) Sections 6321 and 6322, or the Estate Tax Lien arising under IRC Section 6324, from the date of each assessment.

| Kind of Tax and Period | Taxpayer EIN or SSN | Assessment Date | Unpaid Assessed Balance | Accrued Interest | Accrued Late Payment Penalty | TOTAL |
|---|---|---|---|---|---|---|
| 1040 | | | | | | |
| 12/31/2007 | xxx-xx-0635 | 03/24/2008 | -1,495.98 | 1,841.71 | 1,818.31 | 2,164.04 |
| 12/31/2008 | xxx-xx-0635 | 02/07/2011 | 33,905.00 | 6,736.98 | 4,645.24 | 45,287.22 |
| 12/31/2009 | xxx-xx-0635 | 01/09/2012 | 10,500.65 | 1,606.15 | 2,108.49 | 14,215.29 |
| 12/31/2010 | xxx-xx-0635 | 12/26/2011 | 14,540.92 | 1,625.34 | 2,695.52 | 18,861.78 |

| | | |
|---|---|---|
| Date after which additional interest will be charged ▶ | 08/09/2014 | Dated at Laguna Niguel                                    this 10th   day |
| Date after which applicable late payment penalty will be charged ▶ | 08/09/2014 | of July _____ , 20 14 |

If a Notice of Federal Tax Lien(s) has been recorded, a Certificate of Release of Federal Tax Lien will be filed immediately **only** **if payment is made in cash or by either a certified, cashier's, or treasurers check. The check must be drawn on any bank or trust company incorporated under the laws of the United States, or of any state or possession of the United States. Payment also can be made by a United States postal, bank, express, or telegraph money order. If you pay by personal check, issuance of the certificate of release will be delayed until the bank honors the check.**

**Caution to Fiduciaries:** A representative of a person or an estate (except a trustee acting under Title 11) paying any part of a debt of the person or estate before paying a claim of the Government is liable to the extent of the payment for unpaid claims of the Government. (31 U.S.C. § 3713)

Please make payment payable to the United States Treasury and send it to the Internal Revenue Service at the address below.

| By (Name)       *[signature]* for<br>T. Dinh | Title  Acting Advisory<br>GM | ID number | Telephone number<br>(949 ) 389-4587 |
|---|---|---|---|
| Address (Number, Street, P.O. Box, City, State, ZIP code)<br>Collection Advisory Group 5<br>24000 Avila Rd. M/S 5905<br>Laguna Niguel, CA 92677 | | Signature  *[signature]* | |

Catalog No. 65710D                        www.irs.gov                    Form **10492** (Rev. 11-2007)

TOTAL P.02

# EXHIBIT H

# EXHIBIT H

**Nathan Brodnax**

Subject:                    FW: TS#2012-24485

From: Mark Karnes [mailto:MarkAKarnesJr@goharilawgroup.com]
Sent: Tuesday, July 29, 2014 2:44 PM
To: Julie Simpkins
Subject: RE: TS#2012-24485

Hello Julie,

Mr. & Mrs. Tenerelli,

Have assured me that they have cleared up the issue with the IRS and do not owe them any money, how ever they had to move out of their property and have miss placed a lot of important documents. Can you please let me know where we are at with disbursement. Back on July 1st, you had said you were waiting for claims to clear and I should check back in on July 15th.


Thank You Kindly,

**LAW OFFICE OF**
# STEVE S. GOHARI
**2182 DuPont Dr. Suite 17 Irvine, CA 92612**
## Case Manager – Mark A Karnes Jr.
**Office: 949-333-0458   Fax: 949-271-4767   Direct: 714-318-5715**

From: Julie Simpkins <JSimpkins@zievelaw.com>
Sent: Friday, July 11, 2014 1:50 PM
To: Mark Karnes
Subject: RE: TS#2012-24485

Hi Mark

I received your message today. Once you receive the paperwork regarding the IRS lien from your client, please forward to me.

Thank you,

Julie Simpkins
Law Offices of Les Zieve
30 Corporate Park, Suite 450
Irvine, CA 92606
P: 714-848-7920 x321 | F: 714-848-7650
Efax: 1-714-908-7776
mailto: jsimpkins@zievelaw.com

1  LAW OFFICES OF LES ZIEVE
   Nathaniel Brodnax, Bar No. 255285
2  Mike Aleali, Bar No. 285874
   30 Corporate Park, Suite 450
3  Irvine, CA 92606
   Telephone:  (714) 848-7920
4  Fax:  (714) 908-7855

5  Attorneys for Plaintiff
   WESTERN PROGRESSIVE, LLC
6

**F I L E D**
SUPERIOR COURT OF CALIFORNIA
COUNTY OF SAN BERNARDINO
SAN BERNARDINO DISTRICT

SEP 1 9 2014

BY _____
       ILAYALI WADE, DEPUTY

7              IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

8                     FOR THE COUNTY OF SAN BERNARDINO

9

10  WESTERN PROGRESSIVE, LLC,          )  CASE NO.:  CIVDS1414106
                                        )  Unlimited Jurisdiction
11                                      )  Date Action Filed:
              Plaintiff,                )
12                                      )
    vs.                                 )  Assigned for All Purposes to
13                                      )  Hon.
    TONY TENERELLI, an individual;      )  Dept.
14  STEPHANIE TENERELLI, an             )
    individual; THE UNITED STATES OF    )  **DECLARATION OF NATHANIEL**
15  AMERICA; and DOES 1 to 50, inclusive; )  **BRODNAX IN SUPPORT OF [PROPOSED]**
                                        )  **ORDER RE DEPOSIT OF**
16                                      )  **UNDISTRIBUTED SURPLUS PROCEEDS**
              Defendants.               )  **OF TRUSTEE'S SALE;  REQUEST FOR**
17                                      )  **TRUSTEE'S DISCHARGE FROM**
                                        )  **LIABILITY AND OBLIGATION TO**
18                                      )  **PARTICIPATE IN LITIGATION; AND**
                                        )  **REQUEST FOR  FEES AND COSTS**
19                                      )
                                        )
20                                      )  *[Interplead Funds: $27,774.24]*
                                        )
21                                      )
                                        )  Trial Date:        None set.
22

23

24

25

26  ///

27  ///

28  ///

                                        1

DECLARATION OF N. BRODNAX IN SUPPORT OF ORDER AND REQUEST FOR FEES AND COSTS

## DECLARATION OF NATHANIEL BRODNAX

I, Nathaniel Brodnax, declare and state as follows:

1.     I am an attorney with the Law Offices of Les Zieve, duly licensed to practice before all the courts in the State of California and am the attorney of record for Western Progressive, LLC, acting in its capacity as trustee under a deed of trust ("Plaintiff" and "Trustee"). I have personal knowledge of the facts stated in this Declaration, and if called upon as a witness, I could and would competently testify thereto.

2.     For valuable consideration, Tony and Stephanie Tenerelli ("Tenerellis") executed and delivered to New Century Mortgage that certain promissory note evidencing a loan to the Tenerellis in the principal amount of $424,000.00 ("Note"). To secure payment of the principal sum and interest provided in the Note, as part of the same transaction and incorporated herein by this reference, the Tenerellis executed and delivered to New Century Mortgage, as beneficiary that certain Deed of Trust.

3.     On or about February 25, 2014, Plaintiff as the duly appointed trustee of the above referenced deed of trust, after giving all notices required by law, held a foreclosure sale of the Property pursuant to the power of sale under said DOT.   The Trustee's sale resulted in the receipt of funds that exceeded the amount of funds due and owing under the DOT foreclosed upon.

4.     On or about May 19, 2014, the Tenerellis submitted a written claim for the remaining surplus funds resulting from the above referenced trustee sale. The purported claim was based upon the Tenerelli's status as former owners of the foreclosed property at the time of the trustee sale.

5.     On or about July 10, 2014 the IRS submitted a claim in the sum of $80,528.33 based upon its recorded federal tax liens.

6.     On July 29, 2014 Plaintiff received a communication from the Tenerelli's counsel stating that they do not owe the IRS any money, thereby disputing the IRS's claim. As such, there exists a conflict or conflicts which Plaintiff is unable to resolve and therefore Plaintiff is unable to determine if distribution is justified.

2

1    7.    Plaintiff has no independent liability, and has no interest in which party ultimately

2    prevails. Plaintiff is a disinterested stakeholder only. Plaintiff has properly exercised its statutory

3    right to file a Complaint in Interpleader regarding unresolved claims. Pursuant to *Hellman*

4    *Commercial Trust & Savings Bank v. Alden*, 206 Cal. 592, 275 P. 794 (1929) and *San Francisco*

5    *Sav. Union v. Long*, 123 Cal. 107, 55 P. 708 (1898), Plaintiff seeks to be discharged from

6    liability upon depositing the money with the court, dismissed from the interpleader action, and

7    freed from the obligation of participating in the litigation between the claimants.

8    8.    Pursuant to *Dunlap v. Commercial Nat. Bank of Los Angeles*, 50 Cal. App. 476,

9    195 P. 688 (1st Dist. 1920), general rules governing costs in civil cases are applicable to actions

10   of interpleader, allowing a request for costs and reasonable attorney fees to be awarded at the

11   discretion of the court at the time of discharge of that party, from the amount to be deposited

12   with the court.

13   9.    Plaintiff has correctly availed itself of the Interpleader process. As such, Plaintiff

14   has incurred attorneys' fees and costs in connection with this proceeding. Plaintiff has incurred

15   $5,462.50 in attorneys' fees and costs for bringing this application and therefore, respectfully

16   requests the Court issue an order permitting Plaintiff to deduct the amounts from the Funds

17   before its deposit with the Court's clerk. A true and correct statement of hours and services that

18   Plaintiff incurred in this case based upon the firm's billing records as they relate to the hours and

19   services rendered in this matter is attached hereto as Exhibit 1.

20   I declare under penalty of perjury under the laws of the State of California that the

21   foregoing is true and correct, and that this Declaration was executed on this day of September 12,

22   2014, at Irvine, California.

23

24   

25   NATHANIEL BRODNAX

26

27

28

3

# EXHIBIT 1

# EXHIBIT 1

# LAW OFFICES OF LES ZIEVE

### 30 Corporate Park, Suite 450
### Irvine, CA 92606
Ph : 714-848-7920, Fax : 714-794-1745

## Time, Expense & Notes Report

| Date | Type | By | Activity | Description | Client | Matter | Hours | Amount | R T N/C |
|------|------|----|----------|-------------|--------|--------|-------|--------|---------|
| 09/11/14 | Expense | LK | Attorney Service Fee | Personal service fee | Law Offices Of Les Zieve | Tenerelli, Tony & Stephanie | | $375.00 | |
| 09/11/14 | Expense | LK | Attorney Service Fee | Filing complaint | Law Offices Of Les Zieve | Tenerelli, Tony & Stephanie | | $50.00 | |
| 09/11/14 | Expense | LK | Filing Fee | Complaint | Law Offices Of Les Zieve | Tenerelli, Tony & Stephanie | | $435.00 | |
| 09/05/14 | Time | NB | Review | Review and revision of interpleader complaint prior to filing. | Law Offices Of Les Zieve | Tenerelli, Tony & Stephanie | 1.00 | $385.00 | |
| 09/05/14 | Time | NB | Draft | Draft interpleader complaint. | Law Offices Of Les Zieve | Tenerelli, Tony & Stephanie | 2.00 | $770.00 | |
| 09/04/14 | Time | NB | Draft | Draft Interpleader complaint. | Law Offices Of Les Zieve | Tenerelli, Tony & Stephanie | 3.00 | $1,155.00 | |
| 07/11/14 | Time | MA | Review | Review NOI | Law Offices Of Les Zieve | Tenerelli, Tony & Stephanie | 0.30 | $115.50 | |
| 07/09/14 | Time | MA | Correspondence | Contact IRS re lien and status of claim. | Law Offices Of Les Zieve | Tenerelli, Tony & Stephanie | 0.20 | $77.00 | |
| | | | | | | Total Amount : | | $3,362.50 | |

## Paralegal Time Tracking Sheet

| Borrower | Tony and Stephanie Tenerelli | | File Open Date | 5/8/2014 |
|---|---|---|---|---|
| TSN | 2012-24485 | | JST | 584000174 |

| Date | Task | Time Spent |
|---|---|---|
| 5/8/2014 | Order Item #s and Date Down | 0.4 |
| 5/8/2014 | PACER BK Search | 0.4 |
| 5/9/2014 | Review TSG, TDUS, Date Down, All Endorsements & Item #s | 3.4 |
| 5/10/2014 | Prepare & Send out Surplus letter | 1.2 |
| 5/19/2014 | Review of claim received-former owners | 0.4 |
| 5/19/2014 | prepare & Send FAX to IRS | 0.6 |
| 5/19/2014 | Email correspondence with attorney for former owner | 1.1 |
| 6/11/2014 | Email correspondence with attorney for former owner-updates | 0.6 |
| 6/25/2014 | Email correspondence with attorney for former owners | 0.3 |
| 7/1/2014 | FW email to IRS regarding Fax Sent | 0.4 |
| 7/11/2014 | Review claim received-IRS | 0.4 |
| 7/11/2014 | Prepare NOI for review by attorney | 0.6 |
| 7/11/2014 | Email correspondence with attorney for former owner regarding IRS liens | 0.4 |
| 7/16/2014 | Email correspondence with attorney regarding possible interplead. | 0.8 |
| 7/30/2014 | FW Email to confirm file to be interplead with court. | 0.8 |
| 9/5/2014 | Email correspondence with attorney regarding file dispute. | 0.6 |
| | | |
| | | |
| | | |
| | | |
| | Total Time | 12.4 |
| | Hourly amount Billed | $1,860.00 |

| | | |
|---|---|---|
| | Flat Rate to Open File: | $150.00 |
| | Costs: | $90.00 |
| | Total Amount to Bill | $2,100.00 |

**CM-010**

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Law Offices of Les Zieve<br>Nathaniel Brodnax, SBN 255285<br>Mike Aleali, SBN 285874<br>30 Corporate Park, Suite 450, Irvine, CA 92606<br>TELEPHONE NO.: (714) 848-7920  FAX NO.: (714) 908-7855<br>ATTORNEY FOR *(Name):* Western Progressive, LLC | **F I L E D**<br>SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF SAN BERNARDINO<br>SAN BERNARDINO DISTRICT<br><br>SEP 19 2014<br><br>BY _____<br>ILAYALI WADE, DEPUTY |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF San Bernardino
STREET ADDRESS: 247 West Third Street
MAILING ADDRESS:
CITY AND ZIP CODE: San Bernardino, CA 92415
BRANCH NAME: San Bernardino District - Civil Division

CASE NAME:
In Re: 1334 North 2nd Ave Upland CA 91786

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER: |
|---|---|---|---|---|
| ☑ Unlimited<br>(Amount<br>demanded<br>exceeds $25,000) | ☐ Limited<br>(Amount<br>demanded is<br>$25,000 or less) | ☐ Counter  ☐ Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | | **CIVDS1414106**<br>JUDGE:<br>DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
☐ Auto (22)
☐ Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
☐ Asbestos (04)
☐ Product liability (24)
☐ Medical malpractice (45)
☐ Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
☐ Business tort/unfair business practice (07)
☐ Civil rights (08)
☐ Defamation (13)
☐ Fraud (16)
☐ Intellectual property (19)
☐ Professional negligence (25)
☐ Other non-PI/PD/WD tort (35)

**Employment**
☐ Wrongful termination (36)
☐ Other employment (15)

**Contract**
☐ Breach of contract/warranty (06)
☐ Rule 3.740 collections (09)
☐ Other collections (09)
☐ Insurance coverage (18)
☐ Other contract (37)

**Real Property**
☐ Eminent domain/Inverse condemnation (14)
☐ Wrongful eviction (33)
☐ Other real property (26)

**Unlawful Detainer**
☐ Commercial (31)
☐ Residential (32)
☐ Drugs (38)

**Judicial Review**
☐ Asset forfeiture (05)
☐ Petition re: arbitration award (11)
☐ Writ of mandate (02)
☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
☐ Antitrust/Trade regulation (03)
☐ Construction defect (10)
☐ Mass tort (40)
☐ Securities litigation (28)
☐ Environmental/Toxic tort (30)
☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
☐ Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
☐ RICO (27)
☐ Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
☐ Partnership and corporate governance (21)
☑ Other petition *(not specified above)* (43)

2. This case ☐ is ☑ is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties
   b. ☐ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. ☐ Substantial amount of documentary evidence
   d. ☐ Large number of witnesses
   e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. ☐ monetary  b. ☑ nonmonetary; declaratory or injunctive relief  c. ☐ punitive
4. Number of causes of action *(specify):* N/A
5. This case ☐ is ☑ is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: September 12, 2014
Nathaniel Brodnax, SBN 255285
(TYPE OR PRINT NAME) ▶ (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>www.courtinfo.ca.gov |

**INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET**                                                CM-010

**To Plaintiffs and Others Filing First Papers.**  If you are filing a first paper (for example, a complaint) in a civil case, you must complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1.  This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet.  In item 1, you must check one box for the case type that best describes the case.  If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below.  A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.**  A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment.  The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading.  A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.**  In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

**CASE TYPES AND EXAMPLES**

**Auto Tort**
Auto (22)–Personal Injury/Property
  Damage/Wrongful Death
Uninsured Motorist (46) *(if the
  case involves an uninsured
  motorist claim subject to
  arbitration, check this item
  instead of Auto)*

**Other PI/PD/WD (Personal Injury/
Property Damage/Wrongful Death)
Tort**
Asbestos (04)
  Asbestos Property Damage
  Asbestos Personal Injury/
    Wrongful Death
Product Liability *(not asbestos or
  toxic/environmental)* (24)
Medical Malpractice (45)
  Medical Malpractice–
    Physicians & Surgeons
  Other Professional Health Care
    Malpractice
Other PI/PD/WD (23)
  Premises Liability (e.g., slip
    and fall)
  Intentional Bodily Injury/PD/WD
    (e.g., assault, vandalism)
  Intentional Infliction of
    Emotional Distress
  Negligent Infliction of
    Emotional Distress
  Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business
  Practice (07)
Civil Rights (e.g., discrimination,
  false arrest) *(not civil
  harassment)* (08)
Defamation (e.g., slander, libel)
  (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
  Legal Malpractice
  Other Professional Malpractice
    *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
  Breach of Rental/Lease
    Contract *(not unlawful detainer
    or wrongful eviction)*
  Contract/Warranty Breach–Seller
    Plaintiff *(not fraud or negligence)*
  Negligent Breach of Contract/
    Warranty
  Other Breach of Contract/Warranty
Collections (e.g., money owed, open
  book accounts) (09)
  Collection Case–Seller Plaintiff
  Other Promissory Note/Collections
    Case
Insurance Coverage *(not provisionally
  complex)* (18)
  Auto Subrogation
  Other Coverage
Other Contract (37)
  Contractual Fraud
  Other Contract Dispute

**Real Property**
Eminent Domain/Inverse
  Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
  Writ of Possession of Real Property
  Mortgage Foreclosure
  Quiet Title
  Other Real Property *(not eminent
    domain, landlord/tenant, or
    foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal
  drugs, check this item; otherwise,
  report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
  Writ–Administrative Mandamus
  Writ–Mandamus on Limited Court
    Case Matter
  Writ–Other Limited Court Case
    Review
Other Judicial Review (39)
  Review of Health Officer Order
  Notice of Appeal–Labor
    Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal.
Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims
  *(arising from provisionally complex
  case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
  Abstract of Judgment (Out of
    County)
  Confession of Judgment *(non-
    domestic relations)*
  Sister State Judgment
  Administrative Agency Award
    *(not unpaid taxes)*
  Petition/Certification of Entry of
    Judgment on Unpaid Taxes
  Other Enforcement of Judgment
    Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified
  above)* (42)
  Declaratory Relief Only
  Injunctive Relief Only *(non-
    harassment)*
  Mechanics Lien
  Other Commercial Complaint
    Case *(non-tort/non-complex)*
  Other Civil Complaint
    *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate
  Governance (21)
Other Petition *(not specified
  above)* (43)
  Civil Harassment
  Workplace Violence
  Elder/Dependent Adult
    Abuse
  Election Contest
  Petition for Name Change
  Petition for Relief From Late
    Claim
  Other Civil Petition

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN BERNARDINO


San Bernardino District - Civil
247 West Third Street

San Bernardino, CA. 924150210
----------------------------------------------------------------------
----------------------------------------------------------------------
                                    CASE NO: CIVDS1414106
   LAW OFFICES OF LES ZIEVE
   30 CORPORATE PARK
   STE 450
   IRVINE CA 92606
                         NOTICE OF TRIAL SETTING CONFERENCE
                          and NOTICE OF CASE ASSIGNMENT

IN RE: WESTERN PROGRESSIVE -V- TENERELLI

THIS CASE HAS BEEN ASSIGNED TO: DONNA GUNNELL GARZA IN DEPARTMENT S24
FOR ALL PURPOSES.

Notice is hereby given that the above-entitled case has been set for
Trial Setting Conference at the court located at  247 WEST THIRD STREET
SAN BERNARDINO, CA  92415-0210.

        HEARING DATE: 03/18/15 at  8:30 in Dept. S24


DATE: 09/19/14  Christina M. Volkers, Clerk of the Court
                                    By: ILAYALI WADE
----------------------------------------------------------------------
----------------------------------------------------------------------
                   CERTIFICATE OF SERVICE

I am a Deputy Clerk of the Superior Court for the County of San
Bernardino at the above listed address. I am not a party to this
action and on the date and place shown below, I served a copy of the
above listed notice:
( ) Enclosed in a sealed envelope mailed to the interested party
addressed above, for collection and mailing this date, following
standard Court practices.
( ) Enclosed in a sealed envelope, first class postage prepaid in the
U.S. mail at the location shown above, mailed to the interested party
and addressed as shown above, or as shown on the attached listing.
(X) A copy of this notice was given to the filing party at the counter
( ) A copy of this notice was placed in the bin located at this office
and identified as the location for the above law firm's collection of
file stamped documents.

Date of Mailing: 09/19/14
I declare under penalty of perjury that the foregoing is true and
correct. Executed on 09/19/14 at San Bernardino, CA

                                    BY: ILAYALI WADE



Presented by the
Judicial Council of California
And the
State Bar of California

## Introduction

Did you know that most civil lawsuits settle without a trial?

And did you know that there are a number of ways to resolve civil disputes without having to sue somebody?

These alternatives to a lawsuit are known as alternative dispute resolution (ADR). The most common forms of ADR are mediation, arbitration, and case evaluation. There are a number of other kinds of ADR as well.

In ADR, trained, impartial persons decide disputes or help parties decide disputes themselves. These persons are called neutrals. For example, in mediation, the neutral is the mediator. Neutrals normally are chosen by the disputing parties or by the court. Neutrals can help parties resolve disputes without having to go to court.

ADR is not new. ADR is available in many communities, through dispute resolution programs and private neutrals.

## Advantages of ADR

ADR can have a number of advantages over a lawsuit.

- **ADR can be speedier.** A dispute often can be resolved in a matter of months, even weeks, through ADR, while a lawsuit can take years.

- **ADR can save money.** Court costs, attorneys' fees, and expert fees can be saved.

- **ADR can permit more participation.** The parties may have more chances to tell their side of the story than in court and may have more control over the outcome.

- **ADR can be flexible.** The parties can choose the ADR process that is best for them. For example, in mediation the parties may decide how to resolve their dispute.

- **ADR can be cooperative.** This means that the parties having a dispute may work together with the neutral to resolve the dispute and agree to a remedy that makes sense to them, rather than work against each other.

- **ADR can reduce stress.** There are fewer, if any, court appearances. And because ADR can be speedier, and save money, and because the parties are normally cooperative, ADR is easier on the nerves. The parties don't have a lawsuit hanging over their heads for years.

Revised 01-04-12

- **ADR can be more satisfying.** For all the above reasons, many people have reported a high degree of satisfaction with ADR.

Because of these advantages, many parties choose ADR to resolve a dispute, instead of filing a lawsuit. Even when a lawsuit has been filed, the court can refer the dispute to a neutral before the parties' positions harden and the lawsuit becomes costly. ADR has been used to resolve disputes even after a trial, when the result is appealed.

## Disadvantages of ADR

ADR may not be suitable for every dispute.

- If ADR is binding, the parties normally give up most court protections, including a decision by a judge or jury under formal rules of evidence and procedure, and review for legal error by an appellate court.

- There generally is less opportunity to find out about the other side's case with ADR than with litigation. ADR may not be effective if it takes place before the parties have sufficient information to resolve the dispute

- The neutral may charge a fee for his or her services.

- If a dispute is not resolved through ADR, the parties may have to put time and money into both ADR and a lawsuit.

- Lawsuits must be brought within specified periods of time, known as statutes of limitation. Parties must be careful not to let a statute of limitations run out while a dispute is in an ADR process.

## Three Common Types of ADR

This pamphlet describes the forms of ADR most often found in the California state courts and discusses when each may be right for a dispute.

- **MEDIATION**

In mediation, a neutral (the mediator) assists the parties in reaching a mutually acceptable resolution of their dispute. Unlike lawsuits or some other types of ADR, the mediator does not decide how the dispute is to be resolved. The parties do.

Mediation is a cooperative process, in which the parties work together toward a resolution that tries to meet everyone's interests, instead of working against each other, where at least one party loses. Mediation normally leads to better relations between the parties and to resolutions that hold up. For example, mediation has been very successful in family disputes, particularly with child custody and visitation.

Mediation is particularly effective when the parties have a continuing relationship, like neighbors or business people. Mediation also is very effective where personal feelings are getting in the way of a resolution. This is because mediation normally gives the parties a chance to let out their feelings and find out how each other sees things.

Mediation may not be a good idea when one party is unwilling to discuss a resolution or when one party has been a victim of the other or cannot have enough bargaining power in the mediation. However, mediation can be successful for victims seeking restitution from offenders. A mediator can meet with the parties separately when there has been violence between them.

- **ARBITRATION**

In arbitration, a neutral (the arbitrator) reviews evidence, hears arguments, and makes a decision (award) to resolve the dispute. This is very different from mediation, where the mediator helps the parties reach their own resolution. Arbitration normally is more informal and much speedier and less expensive than a lawsuit. Because of the large number of cases awaiting trial in many courts, a dispute normally can be heard much more quickly by an arbitrator than by a judge. Often a case that may take a week to try in court can be heard by an arbitrator in a matter of hours, because evidence can be submitted by documents (like medial reports and bills and business records), rather than testimony.

There are two kinds of arbitration in California. Private arbitration, by agreement of the parties involved in the dispute, takes place outside of the courts and normally, is binding. In most cases "binding" means that the arbitrator's decision (award) is final and there will not be a trial or an appeal of that decision. By contrast, a decision by an arbitrator in a case referred by the courts, known as "judicial arbitration," is not binding, unless parties agree to be bound. A party who does not like the award may file a request for trial with the court within a specified time. However, if that party does not do better in the trial than in arbitration, he or she may have to pay a penalty.

Arbitration is best for cases where the parties want a decision without the expense of a trial. Arbitration may be better than mediation when the parties have no relationship except for the dispute.

Arbitration may not be a good idea when the parties want to resolve their dispute by themselves, or with the aid of a neutral.

- **CASE EVALUATION**

In case evaluation, a neutral (the evaluator) gives an opinion on the strengths and weaknesses of each party's evidence and arguments, and makes an evaluation of the case. Each party gets a chance to present the case and hear the other side. This may lead to a settlement, or at least help the parties prepare to resolve the dispute later on.

Revised 01-04-12

Case evaluation, like mediation, can come early in the dispute and save time and money.

Case evaluation is most effective when someone has an unrealistic view of the dispute or when the only real issue is what the case is worth, or when there are technical or scientific questions to be worked out.

Case evaluation may not be a good idea when it is too soon to tell what the case is worth or when the dispute is about something besides money, like a neighbor playing loud music late at night.

## Additional Information

There are several other types of ADR beside mediation, arbitration, and case evaluation. Some of these are conciliation, settlement conferences, fact finding, mini-trials, and summary jury trials. Sometimes parties will try a combination of ADR types. The important thing is to try to find the type or types of ADR that are most likely to resolve your dispute.

The selection of a neutral is an important decision. There is no legal requirement that the neutral to be licensed or hold any particular certificate. However, some programs have established qualification requirements for neutrals. You may wish to inquire about the qualifications of any neutral you are considering.

Agreements reached through ADR normally are put in writing by the neutral and, if the parties wish, may become binding contracts that can be enforced by a judge.

You may wish to seek the advice of an attorney as to your legal rights and other matters relating to the dispute.

## Whom Do You Call?

To locate a dispute resolution program or neutral in your community:

- Contact the **California Department of Consumer Affairs, Consumer Information Center, toll free, 1-800-952-5210,** or

- Contact the **local bar association,** or

- Look in the **Yellow Pages** under "Arbitrations" or "Mediators."

There may be a charge for services provided by private arbitrators and mediators.



𝔖uperior 𝔔ourt of 𝔔alifornia
𝔔ounty of 𝔖an 𝔅ernardino

# CONTRACTED MEDIATION SERVICE PROVIDERS

The following mediation service providers are under contract with the County of San Bernardino to provide the listed alternate dispute resolution (ADR) services under referral by the Court at no or low cost.  The contractors may also provide additional mediation services outside of their contracts with the County.

*Landlord-tenant, Unlawful Detainer, Small Claims:*

**Inland Fair Housing and Mediation Board**
Program Director: Lynne Anderson, Executive Director
City Center Building
10681 Foothill Boulevard, Suite 101
Rancho Cucamonga, CA 91730
TEL (909) 984-2254, or (800) 321-0911
FAX (909) 460-0274
WEB www.inmedbd.com

*Civil & Family Law (except custody and support):*

**Inland Valleys Justice Center**
Program Director: Kym Adams, Executive Director
1710A Plum Ln
Redlands, CA 92374
TEL (909)798-7117
TOLL FREE (877) 832-9325
FAX (877) 839-1926
WEB www.ivjc.org
EMAIL info@ivjc.org

Revised 01-04-12

**Accommodations For Persons With Disabilities Using Court Facilities**

The Americans with Disabilities Act (ADA) and State law require all state and local governmental entities, including the courts to provide reasonable accommodations for the needs of persons with disabilities. The ADA benefits people who have an interest in court activities, programs and services. In 1996 the Judicial Council of California, the policy-making body for the courts, adopted California Rules of Court, rule 1.00 (former rule 989.3) to implement the ADA in the state court system.

Under the ADA, State laws, and the court rule, a person is entitled to an accommodation if he or she is an "eligible person with a disability." This means the person has a physical or mental impairment that limits one or more major life activities, has a record of such impairment, or is regarded as having such impairment.

It is the individual's responsibility to contact the court to request accommodations that would best suit his or her situation. The individual may request an accommodation by completing the Request for Accommodations by Persons with Disabilities (judicial Council Form MC-410) or by other means, and provide the request to court staff. If the individual is involved in more than one case, they must submit a separate request (MC-410form) for each case. The individual should give the court at least five working days notice whenever possible. The court may grant, modify or deny the request. The information presented will be kept confidential unless ordered released by a Judicial officer, or a written waiver of confidentiality is received from the requestor.

The court will evaluate all requests to make reasonable modifications to its policies, practices, and procedures when these modifications are necessary to avoid discriminating against a person because of a disability.

Service animals are permitted in court facilities. The ADA defines a service animal as any guide dog, signal dog, or other animal individually trained to provide assistance to an individual with a disability. Service animals may go to all areas of the court where customers are normally allowed.

For free tools that allow persons with visual disabilities to read documents in Adobe Acrobat PDF format, please visit http://www.adobe.com/enterprise/accessibility/main.html These tools convert PDF documents into either HTML or ASCII text that can be read by many screen-reading programs.

For further information and forms:

**Jurors:** Please contact the Jury Services Office at (909) 884-1858.

**Others:** Please contact the court's ADA Coordinator at sprentiss@sb-courts.org

**Court employees:** To request accommodation for yourself, please contact your supervisor or the Court's Personnel Department. For information on assisting court customers with Ada issues, refer to the courts intranet site www.sb-court.org

If you should have any questions or concerns regarding Americans with Disabilities, please contact Sharon Prentiss, Director of Court Administrative Services at (909) 708-8745.

Request for Accommodation Instruction Sheet (Non Fillable Form and Rule of Court 1)
http://www.sb-court.org/Portals/0/Documents/PDF/ADA/ADA-Persons-With-Disabilities-MC410QA.pdf

Request for Accommodation Form Fillable Version (MC-410)
http://www.courts.ca.gov/documents/mc410.pdf

Q&A on Rule of Court 1.100
http://www.sb-court.org/Portals/0/Documents/PDF/ADA/Requestsforaccommodationsbypersonswithdisabilities.pdf
Access and Fairness Advisory Flyer
http://www.sb-court.org/Portals/0/Documents/PDF/ADA/ProvidingDisabilityAccommodations.pdf

Revised 01-04-12

# PROOF OF SERVICE BY MAILING

   I am over the age of 18 and not a party to the within action.  I am employed by the Office of the United States Attorney, Central District of California.   My business address is 300 North Los Angeles Street, Suite 7211, Los Angeles, California 90012.

On October 24, 2014, I served

Notice of Removal

the following document(s) by enclosing a copy in an envelope addressed as shown on the attached list and placing the envelope for collection and mailing on the date and at the place shown below following our ordinary office practices.

   I am readily familiar with the practice of this office for collection and processing correspondence for mailing.  On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service in a sealed envelope with postage fully prepaid.

   SEE ATTACHED

Date of mailing: October 24, 2014.
   Place of mailing: Los Angeles, California

   I declare under penalty of perjury under the laws of the United States of America that the foregoing if true and correct.

   I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

   Executed on:  October 24, 2014, Los Angeles, California.

/s/
MARIA LUISA Q. PARCON

WESTERN PROGRESSIVE, LLC V. TONY TENERELLI, ETC.
CIVDS 1414106


SERVICE LIST:


Law Offices of Les Zieve
Nathaniel Brodnax
Mike Aleali
30 Corporate Park, Suite 450
Irvine, CA 92606

Law Office of Steve S. Gohari
2182 Dupont Drive, Suite 17
Irvine, CA 92612

Tony Tenerelli
1334 North 2nd Avenue
Upland, CA 91786

Stephanie Tenerelli
1334 North 2nd Avenue
Upland, CA 91786

COPY

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL COVER SHEET**

| I. (a) PLAINTIFFS ( Check box if you are representing yourself ☐ ) | DEFENDANTS ( Check box if you are representing yourself ☐ ) |
|---|---|
| WESTERN PROGRESSIVE, LLC, | TONY TENERELLI, an individual; STEPHANIE TENERELLI, an individual; THE UNITED STATES OF AMERICA; and DOES 1 to 50, inclusive; |

| (b) County of Residence of First Listed Plaintiff   Fulton County | County of Residence of First Listed Defendant   Orange County |
|---|---|
| *(EXCEPT IN U.S. PLAINTIFF CASES)* | *(IN U.S. PLAINTIFF CASES ONLY)* |

| (c) Attorneys *(Firm Name, Address and Telephone Number)* If you are representing yourself, provide the same information. | Attorneys *(Firm Name, Address and Telephone Number)* If you are representing yourself, provide the same information. |
|---|---|
| Law Offices of Les Zieve<br>Attn: Mike Aleali<br>30 Corporate Park, Suite 450<br>Irvine, CA 92696   Tel. (714) 848-7920   Fax (714) 908-7855 | U.S. ATTORNEY'S OFFICE, ATTN: BENJAMIN TOMPKINS<br>300 N. LOS ANGELES STREET, ROOM 7211<br>LOS ANGELES, CA 90012<br>TEL.: (213) 894-6165, FAX: (213) 894-0115 |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

- ☐ 1. U.S. Government Plaintiff
- ☒ 2. U.S. Government Defendant
- ☐ 3. Federal Question (U.S. Government Not a Party)
- ☐ 4. Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES**-For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

- ☐ 1. Original Proceeding
- ☒ 2. Removed from State Court
- ☐ 3. Remanded from Appellate Court
- ☐ 4. Reinstated or Reopened
- ☐ 5. Transferred from Another District (Specify)
- ☐ 6. Multi-District Litigation

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☐ Yes ☒ No   (Check "Yes" only if demanded in complaint.)

**CLASS ACTION under F.R.Cv.P. 23:** ☐ Yes ☒ No   ☐ MONEY DEMANDED IN COMPLAINT: $

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

28 U.S.C. § 2410

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | REAL PROPERTY CONT. | IMMIGRATION | PRISONER PETITIONS | PROPERTY RIGHTS |
|---|---|---|---|---|---|
| ☐ 375 False Claims Act | ☐ 110 Insurance | ☐ 240 Torts to Land | ☐ 462 Naturalization Application | **Habeas Corpus:** | ☐ 820 Copyrights |
| ☐ 400 State Reapportionment | ☐ 120 Marine | ☐ 245 Tort Product Liability | ☐ 465 Other Immigration Actions | ☐ 463 Alien Detainee | ☐ 830 Patent |
| ☐ 410 Antitrust | ☐ 130 Miller Act | ☐ 290 All Other Real Property | | ☐ 510 Motions to Vacate Sentence | ☐ 840 Trademark |
| ☐ 430 Banks and Banking | ☐ 140 Negotiable Instrument | **TORTS** | **TORTS** | ☐ 530 General | **SOCIAL SECURITY** |
| ☐ 450 Commerce/ICC Rates/Etc. | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | **PERSONAL INJURY** | **PERSONAL PROPERTY** | ☐ 535 Death Penalty | ☐ 861 HIA (1395ff) |
| ☐ 460 Deportation | | ☐ 310 Airplane | ☐ 370 Other Fraud | **Other:** | ☐ 862 Black Lung (923) |
| ☐ 470 Racketeer Influenced & Corrupt Org. | ☐ 151 Medicare Act | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 540 Mandamus/Other | ☐ 863 DIWC/DIWW (405 (g)) |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Vet.) | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 550 Civil Rights | ☐ 864 SSID Title XVI |
| ☐ 490 Cable/Sat TV | | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 555 Prison Condition | ☐ 865 RSI (405 (g)) |
| ☐ 850 Securities/Commodities/Exchange | ☐ 153 Recovery of Overpayment of Vet. Benefits | ☐ 340 Marine | **BANKRUPTCY** | ☐ 560 Civil Detainee Conditions of Confinement | **FEDERAL TAX SUITS** |
| ☐ 890 Other Statutory Actions | ☐ 160 Stockholders' Suits | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | **FORFEITURE/PENALTY** | ☒ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 891 Agricultural Acts | ☐ 190 Other Contract | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 871 IRS-Third Party 26 USC 7609 |
| ☐ 893 Environmental Matters | ☐ 195 Contract Product Liability | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | ☐ 690 Other | |
| ☐ 895 Freedom of Info. Act | ☐ 196 Franchise | ☐ 360 Other Personal Injury | ☐ 440 Other Civil Rights | **LABOR** | |
| ☐ 896 Arbitration | **REAL PROPERTY** | ☐ 362 Personal Injury-Med Malpratice | ☐ 441 Voting | ☐ 710 Fair Labor Standards Act | |
| ☐ 899 Admin. Procedures Act/Review of Appeal of Agency Decision | ☐ 210 Land Condemnation | ☐ 365 Personal Injury-Product Liability | ☐ 442 Employment | ☐ 720 Labor/Mgmt. Relations | |
| | ☐ 220 Foreclosure | ☐ 367 Health Care/Pharmaceutical Personal Injury Product Liability | ☐ 443 Housing/Accommodations | ☐ 740 Railway Labor Act | |
| ☐ 950 Constitutionality of State Statutes | ☐ 230 Rent Lease & Ejectment | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 445 American with Disabilities-Employment | ☐ 751 Family and Medical Leave Act | |
| | | | ☐ 446 American with Disabilities-Other | ☐ 790 Other Labor Litigation | |
| | | | ☐ 448 Education | ☐ 791 Employee Ret. Inc. Security Act | |

| FOR OFFICE USE ONLY: | Case Number: **ED CV 14 - 02197** | |
|---|---|---|
| CV-71 (06/14) | CIVIL COVER SHEET | Page 1 of 3 |

### UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**VIII.  VENUE:** Your answers to the questions below will determine the division of the Court to which this case will be initially assigned.  This initial assignment is subject to change, in accordance with the Court's General Orders, upon review by the Court of your Complaint or Notice of Removal.

| QUESTION A:  Was this case removed from state court? | STATE CASE WAS PENDING IN THE COUNTY OF: | INITIAL DIVISION IN CACD IS: |
|---|---|---|
| [x] Yes   [ ] No | [ ] Los Angeles, Ventura, Santa Barbara, or San Luis Obispo | Western |
| If "no," skip to Question B. If "yes," check the box to the right that applies, enter the corresponding division in response to Question E, below, and continue from there. | [ ] Orange | Southern |
| | [x] Riverside or San Bernardino | Eastern |

| QUESTION B:  Is the United States, or one of its agencies or employees, a PLAINTIFF in this action? | B.1.  Do 50% or more of the defendants who reside in the district reside in Orange Co.? *check one of the boxes to the right* ➡ | [ ] YES. Your case will initially be assigned to the Southern Division. Enter "Southern" in response to Question E, below, and continue from there. |
|---|---|---|
| [ ] Yes   [ ] No | | [ ] NO. Continue to Question B.2. |
| If "no," skip to Question C. If "yes," answer Question B.1, at right. | B.2.  Do 50% or more of the defendants who reside in the district reside in Riverside and/or San Bernardino Counties?  (Consider the two counties together.) *check one of the boxes to the right* | [ ] YES. Your case will initially be assigned to the Eastern Division. Enter "Eastern" in response to Question E, below, and continue from there. |
| | | [ ] NO. Your case will initially be assigned to the Western Division. Enter "Western" in response to Question E, below, and continue from there. |

| QUESTION C:  Is the United States, or one of its agencies or employees, a DEFENDANT in this action? | C.1.  Do 50% or more of the plaintiffs who reside in the district reside in Orange Co.? *check one of the boxes to the right* ➡ | [ ] YES. Your case will initially be assigned to the Southern Division. Enter "Southern" in response to Question E, below, and continue from there. |
|---|---|---|
| [ ] Yes   [ ] No | | [ ] NO. Continue to Question C.2. |
| If "no," skip to Question D. If "yes," answer Question C.1, at right. | C.2.  Do 50% or more of the plaintiffs who reside in the district reside in Riverside and/or San Bernardino Counties?  (Consider the two counties together.) *check one of the boxes to the right* ➡ | [ ] YES. Your case will initially be assigned to the Eastern Division. Enter "Eastern" in response to Question E, below, and continue from there. |
| | | [ ] NO. Your case will initially be assigned to the Western Division. Enter "Western" in response to Question E, below, and continue from there. |

| QUESTION D:  Location of plaintiffs and defendants? | A. Orange County | B. Riverside or San Bernardino County | C. Los Angeles, Ventura, Santa Barbara, or San Luis Obispo County |
|---|---|---|---|
| Indicate the location(s) in which 50% or more of *plaintiffs who reside in this district* reside.  (Check up to two boxes, or leave blank if none of these choices apply.) | [ ] | [ ] | [ ] |
| Indicate the location(s) in which 50% or more of *defendants who reside in this district* reside.  (Check up to two boxes, or leave blank if none of these choices apply.) | [ ] | [ ] | [ ] |

| D.1.  Is there at least one answer in Column A? | D.2.  Is there at least one answer in Column B? |
|---|---|
| [ ] Yes   [ ] No | [ ] Yes   [ ] No |
| If "yes," your case will initially be assigned to the SOUTHERN DIVISION. | If "yes," your case will initially be assigned to the EASTERN DIVISION. |
| Enter "Southern" in response to Question E, below, and continue from there. | Enter "Eastern" in response to Question E, below. |
| If "no," go to question D2 to the right. ➡ | If "no," your case will be assigned to the WESTERN DIVISION. |
| | Enter "Western" in response to Question E, below. ⬇ |

| QUESTION E: Initial Division? | INITIAL DIVISION IN CACD |
|---|---|
| Enter the initial division determined by Question A, B, C, or D above: ➡ | EASTERN |

| QUESTION F: Northern Counties? | | |
|---|---|---|
| Do 50% or more of plaintiffs or defendants in this district reside in Ventura, Santa Barbara, or San Luis Obispo counties? | [ ] Yes | [x] No |

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL COVER SHEET**

**IX(a). IDENTICAL CASES:** Has this action been previously filed **in this court?**    ☒ NO    ☐ YES

      If yes, list case number(s): _____

**IX(b). RELATED CASES:** Is this case related (as defined below) to any cases previously filed **in this court?**    ☒ NO    ☐ YES

      If yes, list case number(s): _____

Civil cases are related when they:

    ☐ A.  Arise from the same or closely related transactions, happening, or event;

    ☐ B.  Call for determination of the same or substantially related or similar questions of law and fact; or

    ☐ C.  For other reasons would entail substantial duplication of labor if heard by different judges.

    Check all boxes that apply.  That cases may involve the same patent, trademark, or copyright is not, in itself, sufficient to deem cases related.

---

**X. SIGNATURE OF ATTORNEY**
**(OR SELF-REPRESENTED LITIGANT):** _____    DATE: 10/24/2014

**Notice to Counsel/Parties:** The submission of this Civil Cover Sheet is required by Local Rule 3-1. This Form CV-71 and the information contained herein neither replaces nor supplements the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. For more detailed instructions, see separate instruction sheet (CV-071A).

---

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405 (g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |